UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------X

FOSSIL GROUP, INC. et al.,

                Plaintiffs,

     -against-

ANGEL SELLER LLC et al.,

                Defendants.

---------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
20-CV-2441 (WFK) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

    Fossil Group, Inc. and Michael Kors, LLC ("Plaintiffs") bring this action against
Angel Seller LLC and others ("Defendants") claiming that Defendants are selling
counterfeit watches that infringe upon Michael Kors' trademarks through Defendant
Angel Seller's Amazon.com store front. (Amended Complaint ("Am. Compl."), ECF No.
16, ¶¶ 1–2, 22–24.) In support of these claims, the Amended Complaint details Plaintiffs'
purchase of several watches they assert are counterfeit from Defendant Angel Seller
between August 2019 and September 2020, including a purchase made following
commencement of this lawsuit. (*Id*. ¶¶ 27–42.) Defendants dispute these accusations,
claiming that the products it sells on its website are legitimate. (Amended Answer
("Am. Answer"), ECF No. 21, ¶ 22–24, Counterclaims ¶ 29.)

    Following the filing of the Complaint that initiated this case on June 2, 2020,
Plaintiffs filed an Amended Complaint on November 13, 2020. (*See* ECF Nos. 1 & 16.) In
response, Defendants first filed an Answer to the Amended Complaint on December 11,
2020, and then an Amended Answer on January 4, 2021. (*See* ECF Nos. 19 & 21.)
Plaintiffs now seek to strike the Amended Answer, arguing that it was untimely filed

and that Defendants' counterclaims should be dismissed. (Referred to herein as "Motion to Strike" or "Motion to Dismiss," ECF No. 30.)

On July 30, 2021, the Honorable William F. Kuntz, II, referred Plaintiffs' Motion to Strike Defendants' Amended Answer to the undersigned Magistrate Judge for a Report and Recommendation. (*See* ECF No. 60.) For the reasons set forth below, this Court respectfully recommends that Plaintiffs' motion be denied in part and that Defendants should be granted leave to amend as to one of their proposed counterclaims under Federal Rule of Civil Procedure 15(a)(2).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

I.  <u>Factual Allegations in the Complaint and Defendants' Counterclaims</u>

As set forth in the Amended Complaint, Plaintiffs Fossil Group and Michael Kors assert that they are the designers and distributors of some of "the most iconic, world-famous, and recognizable time pieces in the world." (Am. Compl., ECF No. 16, ¶ 1.) Plaintiffs allege that, despite being put on notice, Defendants have distributed, and continued distributing, counterfeit and knock-off watches that infringe on Michael Kors' distinctive watches, which are made and distributed by Fossil Group. (*Id.* ¶¶ 2–3.) Plaintiffs also contend that, by engaging in this conduct, Defendants have created a strong likelihood of confusion among consumers and have tarnished the goodwill associated with Plaintiffs and the watches they manufacture. (*Id.* ¶ 3.) Accordingly, Plaintiffs allege claims of trademark counterfeiting, in violation of 15 U.S.C. § 1114; trademark infringement, in violation of 15 U.S.C. § 1114; unfair competition, false designation of origin and false description, in violation of 15 U.S.C. § 1125(a); trademark dilution, in violation of 15 U.S.C. § 1125(c); and unfair and deceptive business practices, in violation of the New York General Business Law, Section 349. (*Id.* ¶¶ 51–87.)

Plaintiffs additionally allege that after the filing of this very case, Defendants' offers for sales and sales of infringing products continued. (Am. Compl., ECF No. 16, ¶ 39.)

In response, Defendants hotly contest Plaintiffs' allegations, and accuse Michael Kors and Fossil Group of defamation and interference with Defendants' contract with Amazon, claiming that Plaintiffs' actions negatively impacted their ability to do business. (Am. Answer, ECF No. 21, Counterclaims ¶¶ 69–131.) In support of these claims, Defendants' Amended Answer asserts four counterclaims against Plaintiffs. The counterclaims allege that (1) Defendant Angel Seller is entitled to a declaratory judgment finding that it has not sold counterfeit Michael Kors products or violated Michael Kors' or Fossil Group's trademark or other rights (Am. Answer, ECF No. 21, Counterclaims ¶¶ 69–79); (2) Plaintiffs engaged in false or misleading representations and unfair competition, in violation of 15 U.S.C. § 1125 (*id.* ¶¶ 80–97); (3) Plaintiffs engaged in tortious interference with Defendants' contract and business relations with Amazon (*id.* ¶¶ 98–115); and (4) Plaintiffs' actions constituted defamation (*id.* ¶¶ 116–31).

## II.  Pertinent Procedural History

On June 2, 2020, Plaintiffs filed a Complaint against Defendants Angel Seller LLC (referred to herein as "Angel Seller" or "AS") and John Does 1–5. (Complaint ("Compl."), ECF No. 1.) The first Complaint alleged, variously, violations of Section 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(a) and 1125(a), Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), and Section 349 of the New York General Business Law. (*Id.* ¶ 4.) Plaintiffs thereafter filed an Amended Complaint on November 13, 2020. (Am. Compl., ECF No. 16.) On November 25, 2020, Defendants filed a Motion for an Extension of Time to File an Answer to the Amended Complaint (*see* Letter Mot., ECF

No. 18), and Magistrate Judge Robert M. Levy granted the Defendants' motion, directing them to answer the Amended Complaint by December 11, 2020. (Dec. 2, 2020 ECF Order.) Defendants filed an Answer to the Amended Complaint on December 11, 2020, as directed. (*See* Answer Am. Compl., ECF No. 19.) On January 4, 2021, Defendants filed an Amended Answer. (*See* Am. Answer, ECF No. 21.)

On January 19, 2021, the Honorable William F. Kuntz, II, granted Plaintiffs' request to file a motion in response to the Amended Answer. (ECF No. 26.) On March 26, 2021, and March 29, 2021, the following motion papers were filed: Plaintiffs' Motion to Strike Defendants' Amended Answer to the Complaint and Defendants' Counterclaims (Mot. to Strike, ECF No. 30), which included five declarations in support[1] and Plaintiffs' Memorandum of Law in Support ("Mem. in Supp.," ECF No. 30-6); Defendants' Affidavit/Declaration in Opposition to Plaintiffs' Motion to Strike ("Aff./Decl. in Opp'n," ECF No. 32); and Defendants' Memorandum in Opposition ("Mem. in Opp'n," ECF No. 35). Then, on March 29, 2021, Defendants filed an additional Affidavit/Declaration in Opposition ("Second Aff./Decl. in Opp'n," ECF No.

---

[1] Notably, on June 1, 2021, Plaintiffs filed a Motion to Withdraw a declaration submitted by Amber Barnes ("Motion to Withdraw"), a declaration which had originally been submitted in support of and along with the Motion to Strike. (Mot. to Withdraw, ECF No. 39.) Plaintiffs explained that while preparing for depositions and gathering documents responsive to discovery requests, Ms. Barnes discovered that certain statements contained in her declaration ("Strike Dec.") were not entirely accurate. (Mem. in Supp., ECF No. 39-2, at 1.) On June 17, 2021, Defendants responded to Plaintiffs' Motion to Withdraw in support of the withdrawal of the Strike Dec. and requested that the Strike Dec. be unsealed. (Resp. to Mot., ECF No. 42, at 1–2.) On June 25, 2021, Plaintiffs filed a Reply in Support of their Motion to Withdraw arguing that the Strike Dec. should remain sealed. (Reply in Supp., ECF No. 44, at 2–3.) On June 28, 2021, the Honorable William F. Kuntz, II, granted Plaintiffs' Motion to Withdraw but denied Defendants' request to unseal the Strike Dec. (June 28, 2021 Order, ECF No. 45.)

36) and Plaintiffs filed an Affidavit/Declaration in Support ("Aff./Decl. in Supp.," ECF No. 34).[2]

Plaintiffs contend that Defendants' Amended Answer should be stricken or dismissed because (1) the Amended Answer is "time barred" in violation of Fed. R. Civ. P. 15(a)(1), and (2) the counterclaims in the Amended Answer fail to state a claim for relief. (Mem. in Supp., ECF No. 30-6, at 9, 11, 14.) In response, Defendants argue that their Amended Answer was timely filed and that the counterclaims are adequately pled. (Mem. in Opp'n, ECF No. 35, at 5, 11.)

As discussed in more detail below, the undersigned finds that Defendants' Amended Answer, although filed without specific leave of court, was timely filed *as an amended answer*. However, Defendants did not have leave of court to file new counterclaims, which are not necessarily permitted in an amendment filed as of right under Federal Rule of Civil Procedure 15(a)(1). Although the better course would have been for Defendants to file a motion to amend under Rule 15(a)(2), given the liberal standard applicable to the filing of amended pleadings and the overlapping standards for a motion to amend and a motion to dismiss under Rule 12(b)(6), the undersigned respectfully recommends reviewing Defendants' proposed counterclaims under the standard applicable to a motion to amend under Rule 15(a)(2).

On the merits, taking each parties' factual assertions as true — as the Court must at this stage of the case — it is respectfully recommended that the relief Plaintiffs seek in their Motion to Dismiss the counterclaims be granted in part and denied in part. Problematically, Plaintiffs' primary argument offered in support of dismissal of the

---

[2] On August 19, 2021, Plaintiffs filed a Notice of Supplemental Authority in Support of their Motion to Strike. (Notice of Suppl. Authority, ECF No. 65.) On August 24, 2021, Defendants filed a Response to Plaintiffs' Notice of Supplemental Authority. (Resp. to Pls.' Notice of Suppl. Authority, ECF No. 66.)

counterclaims is ultimately a question of fact: whether the watches distributed by Defendants in this case are genuine or counterfeit. As discussed below, this factual argument cannot prevail at this stage of the litigation. However, even assuming Defendants' factual allegations to be true, as necessary for purposes of this motion, not all of Defendants' counterclaims are legally plausible. For the reasons contained herein, only one of the four proposed counterclaims states a facially plausible claim.

Accordingly, the undersigned magistrate respectfully recommends the following: (1) Plaintiffs' Motion to Strike should be denied; (2) Defendants should be denied leave to file Counterclaims One (declaratory judgment), Two (Lanham Act), and Three (tortious interference); and (3) Defendants should be granted leave to file Counterclaim Four (defamation).

## DISCUSSION

I.  <u>Legal Standards</u>

A.  <u>Motions to Strike Under Rule 12(f)</u>

As a threshold matter, a motion to strike under Rule 12(f) of the Federal Rules of Civil Procedure should not be used to dismiss a counterclaim. *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 101 (2d Cir. 2019) (citing *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992)); *Demirayak v. City of New York*, No. 17-CV-5205 (WFK) (RER), 2021 WL 1209560, at *2 (E.D.N.Y. Mar. 31, 2021) ("Motions to strike are 'generally disfavored.'") (quoting *Brooklyn Union Gas Co. v. Exxon Mobil Corp.*, 478 F. Supp. 3d 417, 425 (E.D.N.Y. 2020)).

The key inquiry in addressing a new counterclaim is whether it rests on disputed issues of fact. As the Second Circuit has explained:

> [A] new counterclaim may be challenged (1) by a Rule 12(b)(6) motion *if relevant undisputed facts appear on the face of the pleadings or in the record*, (2) by a Rule 56 motion if relevant undisputed facts can

be presented by affidavit, or (3) by an answer under Rule 8(c) if
relevant facts are in dispute.

*Id.* (emphasis added).

### B. Timing of Amended Pleadings & Filing of Counterclaims

Federal Rule of Civil Procedure 16 governs the issuance of scheduling orders and
requires that, among other things, scheduling orders limit the time to amend the
pleadings. Fed. R. Civ. P. 16(b)(3)(A). Rule 15 governs amendments to the pleadings. As
a general matter, Rule 15(a)(1) permits a party to file one amendment as a matter of
course under specific circumstances.[3] Federal Rule of Civil Procedure 15(a)(2) allows
amendments with the other party's consent or with the court's permission and instructs
that the court "should freely give leave when justice so requires." Federal Rule of Civil
Procedure 15(a)(3) dictates the timing of an amended pleading, providing that "any
required response to an amended pleading must be made within the time remaining to
respond to the original pleading or within 14 days after service of the amended
pleading." In the absence of a directive from the court, defendants are generally

---

[3] Federal Rule of Civil Procedure 15(a), which governs amendments of pleadings prior to trial,
provides as follows:

(1) *Amending as a Matter of Course.* A party may amend its pleading once as a matter of
course within:

(A) 21 days after serving it, or

(B) if the pleading is one to which a responsive pleading is required, 21 days after
service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e),
or (f), whichever is earlier.

(2) *Other Amendments.* In all other cases, a party may amend its pleading only with the
opposing party's written consent or the court's leave. The court should freely give leave
when justice so requires.

(3) *Time to Respond.* Unless the court orders otherwise, any required response to an
amended pleading must be made within the time remaining to respond to the original
pleading or within 14 days after service of the amended pleading, whichever is later.

permitted one amendment as of right under the Federal Rules of Civil Procedure. *See Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 224 F.R.D. 534, 535 (E.D.N.Y. 2004) (finding that leave of court is not necessary when a party may amend its pleading once as a matter of course under Federal Rule of Civil Procedure 15(a)(1)(A)). The timing as to when and how a party must file counterclaims is not specified in Rule 15, or Rule 13, which addresses counterclaims. *See, e.g., Ramsay-Nobles v. Keyser*, No. 16-CV-5778 (CM), 2018 WL 6985228, at *3 (S.D.N.Y. Dec. 18, 2018) ("[A]s courts have recognized, Rule 15 does not provide clear guidance as to whether and/or when a Defendant can assert a new counterclaim or defense in an amended pleading *as a matter of right*, when the Defendant did not raise those claims in response to earlier pleadings.") (emphasis in original).

The Second Circuit recently had occasion to consider both the "content of a new counterclaim in an amended answer responding to an amended complaint and the procedures for presenting and challenging such a counterclaim." *GEOMC Co.*, 918 F.3d at 99. As the Second Circuit observed:

> As to content, a new counterclaim, like all pleadings, must conform to the pleading requirements of *Twombly* and *Iqbal*. The closer question is whether a new counterclaim may respond as broadly as one included in an answer to an original complaint or whether it must respond only to the new allegations of an amended complaint. This is an issue that remains unresolved, like other aspects of asserting amended counterclaims. . . .
>
> As to procedure for presenting a new counterclaim, most attempts to amend an answer to include a new counterclaim require permission of the court or consent of the parties. *See* Fed. R. Civ. P. 15(a)(2). The only exceptions occur when a counterclaimant seeks to amend its answer within 21 days after serving its original answer, *see* Fed. R. Civ. P. 15(a)(1)(A), or within 21 days after service upon it of (1) a required responsive pleading, *e.g.*, an answer to a counterclaim, or (2) a motion under Rule 12(b), (e), and (f), *see* Fed. R. Civ. P. 15(a)(1)(B). And attempts to amend an answer to include a new counterclaim after an amended complaint that

8

requires a response has been filed must be made within 14 days
after service of the amended complaint. *See* Fed. R. Civ. P. 15(a)(3).

*Id.* at 100–01 (citing *inter alia*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)) (internal citation omitted).

In reviewing new counterclaims filed in response to an amended complaint, courts may vary in their approaches, depending on how the counterclaims were filed, *i.e.*, with or without leave, and "what appears on the face of the pleadings or in the record." *Id.* at 101. "In ruling on a motion to dismiss a new counterclaim, a district court can either assess the new counterclaim's legal sufficiency or exercise the discretion the court would have been entitled to use if the counterclaimant had moved under Rule 15 to file the new counterclaim." *Id.*

C. The Motion to Dismiss and Motion to Amend Standards

New counterclaims must meet the standards applicable to all pleadings established by *Twombly* and *Iqbal*. *GEOMC Co.*, 918 F.3d at 99. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citation omitted).[4] "A claim has 'facial plausibility' when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct." *Id.* In considering a motion to dismiss under Rule 12(b)(6), "'[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001) (alteration in original) (quoting *Sheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

---

[4] Because a Motion to Strike is not the proper procedural mechanism to dismiss a counterclaim, the Court at times refers to the Plaintiffs' instant motion as a Motion to Dismiss. *See GEOMC Co.*, 918 F.3d at 101 (citing *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992)).

Motions to amend pleadings are reviewed under a similar standard. Federal Rule of Civil Procedure 15(a)(2) permits the filing of an amended pleading on consent or with leave of court, expressly providing that "[t]he court should freely give leave [to amend] when justice so requires." As a general rule, if the underlying facts or circumstances relied upon by the party seeking leave to amend may be a proper subject of relief, the party should be afforded the opportunity to test the claim on its merits. *See United States ex rel. Maritime Admin. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*, 889 F.2d 1248, 1254 (2d Cir. 1989). An amended pleading will be deemed futile, however, if it cannot survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001); *Puchalski v. FM Constr., Inc.*, No. 18-CV-1596 (SJB), 2020 WL 6727777, at *11 (E.D.N.Y. Nov. 16, 2020); *Nicolosi v. BRG Sports, Inc.*, No. 16-CV-2910 (SJ) (CLP), 18-CV-1452 (SJ) (CLP), 2019 WL 5695852, at *4 (E.D.N.Y. Aug. 21, 2019).

In filing a pleading with counterclaims, timing matters — but the timing for counterclaims is not necessarily governed by Rule 15's timing requirements for amended pleadings. The Second Circuit has observed that:

> [i]f an amended answer with a new counterclaim is presented at an early stage of the litigation, the new counterclaim may normally be as broad as those filed in response to an original complaint. At a late stage of the litigation, however, a new counterclaim that raises issues beyond the scope of the new claims made in the most recent amended complaint will usually cause escalating prejudice[.]

*GEOMC Co.*, 918 F.3d at 100.

Similarly, in analyzing whether to grant leave to amend under Rule 15, courts look to whether the amendment would prejudice the opposing party or "unduly expand" the litigation. *Id.* at 101; *see also Fair Hous. Just. Ctr., Inc. v. Pelican Mgmt., Inc.*, No. 18 CV 1564 (ER), 2020 WL 4262291, at *4 (S.D.N.Y. July 24, 2020); *Hybrid Athletics,*

*LLC v. Hylete, LLC*, No. 3:17-CV-1767 (VAB), 2019 WL 4143035, at \*14 (D. Conn. Aug. 30, 2019), *reconsideration denied sub nom. Hybrid Athletics, LLC v. Hylete, Inc.*, No. 3:17-CV-1767 (VAB), 2019 WL 4957921 (D. Conn. Oct. 8, 2019) ("[T]he Court finds that the risk of undue prejudice to Hybrid from this amendment is minimal, as it does not appear resolution of this counterclaim would require any additional discovery, or turn on any genuine dispute of material fact.") (citation omitted).

In the absence of undue prejudice, however, it is well established that "leave to amend 'shall be freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962) (quoting Fed. R. Civ. P. 15(a)). But an amended pleading that seeks to add new counterclaims "can also be rejected because of 'undue delay, bad faith or dilatory motive.'" *GEOMC Co.*, 918 F.3d at 100 (quoting *Foman*, 371 U.S. at 182).

\*   \*   \*   \*   \*

Plaintiffs in this case contend that the Amended Answer is untimely and fails to state plausible counterclaims. (Mem. in Opp'n, ECF No. 35, at 2.) Accordingly, Plaintiffs move to dismiss Defendants' counterclaims under Rule 12(b)(6). (Mot. to Dismiss, ECF No. 30-6, at 4 ("Therefore, Plaintiffs respectfully move this Court to strike the amended pleading pursuant to [sic] or, in the alternative, to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).").) However, Plaintiffs' arguments in support of their motion to dismiss are premised almost entirely on an issue of fact, *i.e.*, whether the watches Defendants sold were genuine or counterfeit, which the court cannot reach at this stage. *See GEOMC Co.*, 918 F.3d at 101 (observing that a new counterclaim may be challenged "by a Rule 12(b)(6) motion if relevant undisputed facts appear on the face of the pleadings or in the record"). But, in the context of the Motion to Dismiss, the parties have had ample opportunity to address the merits of Defendants' counterclaims.

Accordingly, and for the reasons that follow, the undersigned magistrate respectfully recommends that, in an exercise of discretion, and for the sake of judicial efficiency, the motion to dismiss should be construed as a response to a motion to amend and that Defendants should be granted leave to file one of their four counterclaims. *See Provepharm, Inc. v. Akorn, Inc.*, No. 17-CV-7087 (SJF) (AKT), 2019 WL 2443185, at *6 (E.D.N.Y. June 11, 2019) (denying plaintiff's motion to dismiss counterclaims filed without leave of court and considering the merits of plaintiff's motion to dismiss arguments as if "directed at [defendant's] proposed amended counterclaims to determine whether the proposed amendments are futile"); *see also, e.g., Rubio v. BSDB Mgmt. Inc.*, No. 19-CV-11880 (VSB), 2021 WL 102651, at *6 (S.D.N.Y. Jan. 12, 2021).

## II.   The Timing of Defendants' Amended Answer

Plaintiffs filed their Amended Complaint on November 13, 2020.[5] (Am. Compl., ECF No. 16.) Once Plaintiffs filed their Amended Complaint, Defendants' response was due fourteen days later, *i.e.*, by November 27, 2020, pursuant to the operation of Rule 15(a)(3). On November 25, 2020, Defendants filed a request for an extension of time to file their answer (Defs.' Mot., ECF No. 18), which Magistrate Judge Robert M. Levy granted, setting December 11, 2020, as the due date for Defendants' Answer to the

---

[5] By way of background, on August 26, 2020, Magistrate Judge James Orenstein issued a scheduling order that set the deadline for amending the pleadings as November 16, 2020. (Scheduling Order, ECF No. 14, at 1.) Plaintiffs argue that the Amended Answer was untimely under the Scheduling Order and that Defendants should have requested an extension of the Scheduling Order's deadline to amend the pleadings. (Mem. in Supp., ECF No. 30-6, at 10.) Although seeking an extension of the deadline to amend the pleadings certainly would have been prudent, given the unsettled law on the scope and procedure for filing counterclaims and Plaintiffs' opportunity to challenge the counterclaims, Defendants' failure to seek additional time should not be deemed a bar that would altogether prevent Defendants the opportunity to attempt to file their counterclaims, particularly in light of the permissive standard for filing an amended pleading established by Rule 15(a)(2).

Amended Complaint. (Dec. 2, 2020 ECF Order.) Defendants filed their Answer to the Amended Complaint on December 11, 2020. (Answer Am. Compl., ECF No. 19.) Defendants then filed an Amended Answer to the Amended Complaint on January 4, 2021. (Am. Answer, ECF No. 21.) The Amended Answer filed on January 4, 2021, was almost identical to the December 11, 2020 Answer, but added the four counterclaims at issue in the Motion to Dismiss.

> A. <u>New Counterclaims in an Amended Answer</u>

Courts have taken different approaches on whether and when new counterclaims may be asserted in an amended answer that responds to an amended complaint. *See, e.g.*, *Ramsay-Nobles*, 2018 WL 6985228, at *3 (detailing three different approaches courts have taken to new counterclaims: "narrow," "permissive," or "moderate"). Under the "narrow approach," a new counterclaim "ha[s] to be tailored specifically to address the amendments in the complaint." *GEOMC Co.*, 918 F.3d at 100 n.12 (citing 3 Moore's Federal Practice § 15.17[6]); *see also Ramsay-Nobles*, 2018 WL 6985228, at *3. The "permissive approach" allows new counterclaims to be included in an amended answer "without leave of court, regardless of the nature of the amended complaint." *Id.* The "moderate approach," in contrast, suggests that new counterclaims may be filed "without seeking permission if the amended complaint changes the theory or scope of the case," but that such counterclaims "must be those that respond to new allegations in the amended complaint." *Id.*; *see also Upek, Inc. v. Authentec Inc.*, No. 10-424-JF (PVT), 2020 WL 2681734, at *3 (N.D. Cal. July 6, 2010) ("When an amended pleading does not add new parties, new claims, or significant new factual allegations, courts are often willing to allow the previously filed response to the original pleading [to] suffice.") (citations omitted). Finally, the analysis set forth in *Bern Unlimited, Inc. v. Burton Corp.*, 25 F. Supp. 3d 170 (D. Mass. 2014), also known as the "*Bern* approach,"

suggests that courts determining whether new counterclaims may be filed should "simply apply normal Rule 15(a) standards, in all their flexibility." *GEOMC Co.*, 918 F.3d at 100 n.12.[6]

     B.  <u>Analysis</u>

Plaintiffs argue that the Amended Answer should be struck as "time barred," but their argument misses the mark. Even if the Amended Answer was timely (which it was *as an amended answer*),[7] that does not mean that Defendants may include new counterclaims in their amended pleading as of right, as discussed above. It also does not mean that their counterclaims should be stricken. *See GEOMC Co.*, 918 F.3d at 101. Given the overlapping standards for legal sufficiency under Rule 12(b)(6) and futility under Rule 15, and mindful of the *GEOMC Co.* court's guidance that the Court may address the legal sufficiency of the counterclaims or exercise the discretion afforded had

---

[6] In light of the procedural history and record in this case, including the fact that the Amended Answer was filed relatively early in the litigation (approximately seven months after the filing of the original Complaint, and while the case was still in discovery), and the fact that the parties have briefed the adequacy of the new counterclaims under the standards applicable to a motion to dismiss under Rule 12(b)(6), it is not necessary to decide which of these four approaches to take as a general rule. Given the liberal standard for amending a pleading under Rule 15(a)(2), and that full briefing has been submitted as to the proposed counterclaims, applying "normal Rule 15(a) standards, in all their flexibility" promotes efficiency in this case. *GEOMC Co.*, 918 F.3d at n.12.

[7] Plaintiffs argue that any amendment in this case was due by January 1, 2021. (Mem. in Supp., ECF No. 30-6, at 11.) Plaintiffs' argument overlooks Federal Rule of Civil Procedure 6(a)(1)(C), which provides that, in computing a period of time that is stated in days, when the last day of the period is a Saturday, Sunday, or legal holiday, the period is extended to the next business day the Court is open. In this case, by Plaintiffs' calculation, the last day of the twenty-one-day period for Defendants to have filed their answer was January 1, 2021 — New Year's Day, which happened to fall on a Friday. Accordingly, Friday, January 1, 2021, through Sunday, January 3, 2021, were automatically excluded in counting the time under Rule 6(a)(1)(C) in this case. Thus, Defendants Amended Answer, filed on January 4, 2021, was timely *as an amended answer*. *See also* E.D.N.Y. Local Civil Rule 6.4 (reiterating Federal Rule of Civil Procedure 6(a)(1)(C) and providing for an automatic extension of the time when a deadline falls on a legal holiday, Saturday, or Sunday).

Defendants moved under Rule 15, the Court now turns to an assessment of the new counterclaims' legal sufficiency.

III.   The Facial Plausibility of the Counterclaims

Plaintiffs contend that the Defendants' counterclaims should be dismissed under Rule 12(b)(6). (Mem. in Supp., ECF No. 30-6, at 11, 14.)  Plaintiffs' arguments are largely premised, however, on a question of fact — Plaintiffs' core assertion is that Defendants cannot prevail on their counterclaims because the watches at issue in this case are counterfeit.[8] Assuming Defendants' assertion that they only sell legitimate products is true, which the Court must in this context, *see Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007), Defendants (or Counterclaim Plaintiffs) state a facially plausible claim for relief as to one potential counterclaim.[9] The remaining three counterclaims are not sufficiently pled, and, having reviewed Defendants' proposed counterclaims under the Rule 15(a) standards, Defendants should be denied leave to file the declaratory judgment, Lanham Act, and tortious interference counterclaims for the reasons set forth below. The defamation counterclaim, however, does not prejudice the Plaintiffs or expand the scope of the litigation since the core issue for this counterclaim, whether the watches at issue are counterfeit and thus, whether Plaintiffs' reports to

---

[8] *See* Mem. in Supp., ECF No. 30-6, at 4 ("[S]ince the watches are all counterfeit, as Defendants are well aware, [Defendants' Amended Answer] fails to state a claim for relief . . . ."; *id.* at 11 ("Each one of the claims set forth in the Amended Answer are all dependent of the [sic] unfounded allegation that the Counterfeit Product is real.")).

[9] Relying primarily on the Strike Dec. of Amanda Barnes, Plaintiffs argue that the infringing products are non-genuine. (*See* Mem. in Supp., ECF No. 30-6, at 13, 14.) The Court cannot consider Ms. Barnes' declaration or the other factual assertions set forth in the declarations filed in support of the Motion to Dismiss. "Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006); *see also Taylor v. City of New York*, No. 18-CV-5500 (KAM) (ST), 2021 WL 848966, at *4 (E.D.N.Y. Mar. 4, 2021) (declining to consider "factual declaration," "photographs," and other materials "outside of the pleadings" at the "Rule 15 motion to amend stage"). Additionally, there can be no reliance on the Strike Dec. because it has been withdrawn at Plaintiffs' request. (*See* June 28, 2021 Order, ECF No. 45.)

Amazon are false, is the core issue in the case. In addition, the defamation counterclaim is adequately pled and should be permitted, in part.

    A. <u>Defendants' Declaratory Judgment Counterclaim</u>

        *1.   The Declaratory Judgment Act*

The first counterclaim seeks a declaratory judgment. (Am. Answer, ECF No. 21, Counterclaims ¶¶ 69–79.) The Declaratory Judgment Act ("DJA") provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Importantly, the DJA does not confer rights to "the litigant invoking the remedy." *Dow Jones & Co., Inc. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 405 (S.D.N.Y. 2002). Rather, in cases involving an "actual controversy," the DJA "confers discretionary jurisdiction upon federal courts," empowering the court to "declare the rights and other legal relations of any interested party seeking such declaration." *Id.* at 404–05. As the Second Circuit has observed, the declaratory judgment remedy permits parties "to settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of the rights or a disturbance of the relationships." *Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59, 66 (2d Cir. 2012) (quoting *Beacon Constr. Co. v. Matco Elec. Co.*, 521 F.2d 392, 397 (2d Cir. 1975)).

    The Supreme Court's decisions on declaratory judgments

> have required that the dispute be "definite and concrete, touching the legal relations of parties having adverse legal interests"; and that it be "real and substantial" and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (alterations in original) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937)). The key question in

each action seeking a declaratory judgment is "'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant' the issuance of a declaratory judgment."[10] *Id.* (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

Declaratory judgments are forward-looking. *See, e.g., Vascular Imaging Professionals, Inc. v. Digirad Corporation*, 401 F. Supp. 3d 1005, 1010 (S.D. Cal. 2019) ("Declaratory relief is not intended to redress past wrongs, its purpose is to resolve uncertainties or disputes that may result in future litigation."). In general terms, "[a] party has a right to seek declaratory judgment where a reasonable apprehension exists that if it continues an activity it will be sued by another party." *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 132 (S.D.N.Y. 1994). But that does not mean that relief under the DJA is available as "a defensive shield, a preemptive means to immunize a litigant from . . . litigation arising from the party's alleged wrongful acts." *Dow Jones*, 237 F. Supp. 2d at 418.

### 2. *The DJA Does Not Afford the Relief Defendants Seek*

In this case, Defendants aver that they only sell genuine products, and that they have alleged a genuine case or controversy that would warrant relief under the DJA.

---

[10] The Second Circuit has observed that "[t]he Declaratory Judgment Act by its express terms vests a district court with discretion to determine whether it will exert jurisdiction over a proposed declaratory action or not." *Dow Jones & Co., Inc. v. Harrods, Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003). In making that determination, the Second Circuit has identified five factors for district courts to consider: (1) "whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved;" (2) "whether a judgment would finalize the controversy and offer relief from uncertainty;" (3) "whether the proposed remedy is being used merely for 'procedural fencing' or a 'race to res judicata';" (4) "whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a stage or foreign court;" and (5) "whether there is a better or more effective remedy." *Id.* at 359–60 (citations omitted).

(*See* Mem. in Opp'n, ECF No. 35, at 11–12.) In support of their argument, they contend that they should not need to risk a suit for infringement by continuing to sell the same watches before obtaining a declaration of their legal rights. (*Id.* at 12 (citing *SanDisk Corp. v. STMicroelectronics., Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007); *Canon U.S.A., Inc. v. F & E Trading LLC*, No. 15-CV-6015 (DRH) (AYS), 2017 WL 4357339, at *11 (E.D.N.Y. Sept. 29, 2017)). In the declaratory judgment counterclaim, Defendants allege that (1) the "Michael Kors Products sold by AS were not counterfeit" (Am. Answer, ECF No. 21, Counterclaims ¶ 73); and (2) Plaintiffs complaints to Amazon resulted in the suspension of AS's selling privileges as to Michael Kors and all other products, and placed them in jeopardy of permanent suspension of all selling privileges (*id.* at ¶¶ 74–76). Based on these claims, Defendants assert that they are entitled to a declaratory judgment that they have "not sold counterfeit Michael Kors Products" and that AS "has not violated Counterclaim Defendants' trademark rights or other rights, whether under Federal or State law." (*Id.* at ¶¶ 78–79.)

A key problem with Defendants' claim is that, other than the allegations of Plaintiffs' interference with their business relationship with Amazon, the request for declaratory relief does not identify what "legal relations of parties having adverse legal interests" should be decided. *MedImmune, Inc.*, 549 U.S. at 127. Clearly, Defendants have no legal right to sell counterfeit products. They also state no facts in support of a claim that they have a right to sell similar products that look like Michael Kors watches. To the extent that Defendants are seeking a declaration that they have *not* sold counterfeit watches in the past, in order to avoid suit in the future, this is not a proper request for declaratory relief — it is a request for the Court to decide the very facts at issue in this case. As explained above, Defendants may not use the DJA to seek "a defensive shield,

a preemptive means to immunize a litigant from . . . litigation arising from the party's alleged wrongful acts." *Dow Jones*, 237 F. Supp. 2d at 418.

Phrased another way, Defendants simply have not alleged facts to demonstrate that they and Plaintiffs have "adverse legal interests, of sufficient immediacy and reality." *MedImmune Inc.*, 549 U.S. at 127. As noted, the nature of the declaration Plaintiffs seek in this case is *factual*: they seek a court determination that they did not sell counterfeit watches. This request is in stark contrast to more typical trademark or patent cases — where a request for a declaratory judgment may be properly pled — for example, when a patentee takes a position regarding proper use of a patent that could put "plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do." *SanDisk Corp.*, 480 F.3d at 1381. In that type of case, a declaratory judgment plaintiff's anticipated actions may be defined with specificity, making it possible for the court to make an informed determination about the scope of each parties' legal rights as compared to each other, in reference to a registered patent or trademark.

Furthermore, to the extent Defendants' counterclaim seeks a declaration about past conduct, they are asking the Court to determine a negative — what *did not* happen in the past. And, if their request touches upon whether they will sell counterfeit watches in the future, such a determination would be entirely speculative. Neither of these requests are appropriate for declaratory relief. For these reasons, Defendants should not be granted leave to amend to include their declaratory judgment counterclaim.

B.  Defendants' Lanham Act Counterclaim

The second counterclaim, a false or misleading representation claim under the Lanham Act, 15 U.S.C. § 1125, is also inadequately pled. Section 43(a) of the Lanham Act provides that a party who "uses in commerce any . . . false or misleading

19

representation of fact" regarding "any goods or services" is liable to anyone likely to be damaged by that act if the false representation is likely to cause confusion, mistake, or deception regarding "commercial activities by another person." 15 U.S.C. § 1125(a)(1). The Second Circuit has adopted a three-part test to determine if the statements at issue are covered by the Lanham Act — the statement must be "(1) 'commercial speech,' (2) made 'for the purpose of influencing consumers to buy defendant's goods or services,' and (3) 'although representations less formal than those made as part of a classic advertising campaign may suffice, they must be disseminated sufficiently to the relevant purchasing public.'" *Gmurzynska v. Hutton*, 355 F.3d 206, 210 (2d Cir. 2004) (quoting *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 56 (2d Cir. 2002)).

Defendants' Amended Answer does not allege sufficient facts under the Second Circuit's test. As to the first factor, that the statements were commercial speech, the Amended Answer alleges that "Counterclaim Defendants [(Plaintiffs)] have knowingly made false, misleading, and defamatory statements in commerce through Amazon's infringement reporting tools." (Am. Answer, ECF No. 21, Counterclaims ¶ 85.) For the second factor, the Amended Answer claims that "Counterclaim Defendants acted with the intent that AS's ability to sell Michael Kors Products be removed, thereby forcing consumers to purchase Michael Kors Products directly from Counterclaim Defendants and/or select distributors." (*Id.* ¶ 91.)

Relevant to the third factor, the Amended Answer alleges: "Counterclaim Defendants' reports to Amazon were designed to advance their business interests by removing AS's listings from the Amazon marketplace thereby increasing Counterclaim Defendants' market share" (*id.* ¶ 86) and "Counterclaim Defendants' false and misleading representations were sufficiently disseminated to actual and prospective

20

customers by way of the reports to Amazon so as to constitute advertising." (*Id.* ¶ 87.) Those two allegations are not enough to allege the third factor of the Second Circuit's test: that the false statements were "disseminated sufficiently to the relevant purchasing public." *Fashion Boutique of Short Hills, Inc.*, 314 F.3d at 56.

In *Eminah Properties LLC v. Energizer Holdings, Inc.*, Judge Donnelly recently reviewed a similar allegation in the context of a motion to dismiss. 20-CV-148 (AMD) (CLP), 2021 WL 1209562, at *1 (E.D.N.Y. March 31, 2021). One of the alleged claims in the *Eminah Properties* complaint was a false or misleading representation and unfair competition claim under the Lanham Act based on the defendants' submission of allegedly false infringement reports to eBay. *Id.* at *6–7. In *Eminah Properties*, the plaintiffs pled that the defendants made infringing reports to "advance their business interests by removing [the] [p]laintiffs' listings and listing content from the eBay marketplace," and that the defendants' "false reports directly resulted in the removal of listing content and were thereby disseminated to any actual or potential customers that sought to purchase [the] [p]laintiffs' products." *Id.* at *7 (alterations in original). The court in *Eminah Properties* found that those allegations were not enough under the third factor of the Second Circuit's test because they did not sufficiently allege that the "removal of content from a listing results in a dissemination to customers of private complaints; indeed, the complaint does not allege which content was removed." *Id.*

Although the Amended Answer in this case generally alleges that Defendants' selling privileges were suspended (Am. Answer, ECF No. 21, Counterclaims ¶¶ 57, 60, 74–75), the Amended Answer does not adequately allege public dissemination of Plaintiffs' statements or removal of specific content. An allegation that the "Counterclaim Defendants' reports . . . were designed to advance their business interests by removing AS's listing from the Amazon marketplace" alleges intent to

remove but not removal of content. (Am. Answer, ECF No. 21, Counterclaims ¶ 86.) Similarly, an allegation that the Counterclaim Defendants' infringing reports resulted in "the suspension of AS's ability to sell Michael Kors Products" (*id.* ¶ 48) does not show removal of content leading to dissemination of the infringing reports to the purchasing public but instead suggests that AS could not sell Michael Kors products for a period of time. Defendants' cursory allegation that the representations "were sufficiently disseminated to actual and prospective customers by way of the reports to Amazon so as to constitute advertising," provides no specificity as to what representations were disseminated or how. (Am. Answer, ECF No. 21, Counterclaims ¶ 87.) The Amended Answer thus does not contain allegations of dissemination through removal of specific content, nor does it allege facts that support an inference that Amazon in fact distributed derogatory information to its consumers, or that Amazon itself is the "purchasing public." *See Eminah Properties LLC*, 2021 WL 1209562, at *8.

For statements to fall under the Lanham Act, the Second Circuit requires dissemination to the purchasing public. Here, the Defendants have not adequately pled that element. Accordingly, Defendants should be denied leave to file their Lanham Act claim.

C. Defendants' Tortious Interference Counterclaim

The third counterclaim, alleging tortious interference with contract and business relations, is likewise not sufficiently pled. To adequately plead tortious interference under New York law, "a plaintiff must establish '(a) that a valid contract exists; (b) that a third party had knowledge of the contract; (c) that the third party intentionally and improperly procured the breach of the contract; and (d) that the breach resulted in damage to the plaintiff.'" *TechnoMarine SA v. Jacob Time, Inc.*, 905 F. Supp. 2d 482, 493–94 (S.D.N.Y. 2012) (quoting *Finley v. Giacobbe*, 79 F.3d 1285, 1294 (2d Cir. 1996)).

Taking Defendants' assertion that they have never sold infringing watches as true, as the Court must in evaluating the pleadings, Defendants' Amended Answer has not set forth a facially plausible tortious interference claim because it has not sufficiently alleged that Plaintiffs caused a breach of Defendants' contract with Amazon. The Defendants' Amended Answer pleads that (a) "Defendants (Counterclaim Plaintiffs) are in a contractual relationship with Amazon" (Am. Answer, ECF No. 21, Counterclaims ¶ 100); (b) "Plaintiffs (Counterclaim Defendants) were aware of that contractual relationship" (*id.* ¶ 101); (c) "Counterclaim Defendants intentionally and improperly interfered with AS's advantageous and contractual relationship with Amazon by complaining, in writing to Amazon, that AS was selling counterfeit products" (*id.* ¶ 103); and (d) "Counterclaim Defendants' actions interfered with AS's business relationship with Amazon and proximately caused the suspension of AS's selling privileges" (*id.* ¶ 109), and that "AS has been damaged by suspension of these listings by losing revenue related to Michael Kors products." (*Id.* ¶ 113.)

However, the allegation that the "Counterclaim Defendants' actions interfered with AS's business relationship with Amazon" (*id.* ¶ 109) is not enough to allege an injury to AS's relationship with Amazon for the purpose of stating a tortious interference claim. *See Eminah Properties LLC*, 2021 WL 1209562, at *9. To allege that there was injury to a contractual relationship when claiming tortious interference, Defendants must allege sufficient facts from which to infer that the contractual relationship was damaged. *Id.* (citing *RFP LLC v. SCVNGR, Inc.*, 788 F. Supp. 2d 191, 198–99 (S.D.N.Y. 2011) (finding that the allegations were insufficient to support the injury element of the tortious interference claim because there was no evidence of a breakdown in the contractual relationship)). Some courts even require allegations that the business or contractual relationship has deteriorated or ended. *See Radiancy Inc. v.*

*Viatek Consumer Prod. Grp., Inc.*, 138 F. Supp. 3d 303, 328 (S.D.N.Y. 2014), *as amended*
(Apr. 1, 2014) ("Viatek does not allege in its Counterclaims that the actions taken by
Radiancy caused the end of the business relationship that it enjoyed with ShopNBC . . . .
Absent allegations that Radiancy's conduct caused the deterioration of the business
relationship between Viatek and ShopNBC, Viatek's claim for tortious interference
fails."). Accordingly, the Defendants' tortious interference counterclaim, as alleged, is
insufficient and leave to file the third Counterclaim in the Amended Answer should be
denied.

D.  Defendants' Defamation Counterclaim

Finally, the fourth counterclaim, a defamation counterclaim, is sufficiently pled
as to three out of four of the alleged infringement notices. The elements of defamation
under New York law include: "(1) a written defamatory statement of and concerning
the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory
statement, and (5) special damages or per se actionability." *Palin v. New York Times Co.*,
940 F.3d 804, 809 (2d Cir. 2019). Of relevance to the first element, the Amended Answer
states: "Counterclaim Defendants published false statements to Amazon regarding AS,
as described in this Complaint, including reporting to Amazon that AS sold
'counterfeit' Michael Kors Products" (Am. Answer, ECF No. 21, Counterclaims ¶ 117),
and that "Counterclaim Defendants filed, or direct [sic] their agents to file, complaints
with Amazon that alleged that AS was selling 'counterfeit' Michael Kors Products." (*Id.*
¶ 37.)

As a general rule, New York law requires that the particular words of a
defamatory statement be included in a complaint. *See* N.Y. C.P.L.R. 3016(a)
(McKinney 2015) ("Libel or slander. In an action for libel or slander, the particular
words complained of shall be set forth in the complaint, but their application to the

24

plaintiff may be stated generally."). Courts have found that a complaint violates this rule of particularity when the actual defamatory words were "only paraphrased in a manner such that the actual words were not evident from the face of the complaint." *Murganti v. Weber*, 669 N.Y.S. 2d 818 (1st Dep't 1998); *see also Roth v. United Federation of Teachers*, 787 N.Y.S. 2d 603, 609 (Sup. Ct. Kings Cnty. 2004). In this case, the actual words are evident from the face of the complaint because Defendants repeatedly allege that the Plaintiffs sent statements to Amazon reporting that AS was selling counterfeit Michael Kors products. Additionally, Defendants also allege that when someone files an infringement notice to Amazon they have to swear to the following: "I have a good faith belief that the content(s) described above violate(s) my rights described above or those held by the rights owner, and that the use of such content(s) is contrary to law"; "I declare, under penalty of perjury, that the information contained in this notification is correct and accurate and that I am the owner or agent of the owner of the rights described above." (Am. Answer, ECF No. 21, Counterclaims ¶ 40.)

As to the second element, Defendants allege that the false statements were published to Amazon, a third party. (*Id.* ¶ 117.) The Second Circuit has observed that under New York law, public exposure is not required to state a defamation claim. *Albert v. Loksen*, 239 F.3d 256, 269 (2d Cir. 2001) ("Under New York defamation law, publication is a term of art . . . A defamatory writing is not published if it is read by no one but the one defamed. Published it is, however, as soon as read by any one else.") (internal quotation marks and citation omitted). For the third element, the Amended Answer alleges fault by stating, "Counterclaim Defendants acted with actual malice or with reckless disregard for the truth of the matter contained in Defendants' false statements to Amazon and AS's customers." (*Id.* ¶ 124.)

Relevant to the fourth element, the alleged falsity of the defamatory statement, the Amended Answers claims: "Counterclaim Defendants published false statements to Amazon regarding AS, as described in this Complaint, including reporting to Amazon that AS sold 'counterfeit' Michael Kors Products" (*id.* ¶ 117), and that "AS did not sell counterfeit Michael Kors Products." (*Id.* ¶ 118.) The Amended Answer also alleges the following statements, which support the fifth element: "False statements that are directed to the honesty, efficiency, or other business character traits amount to defamation per se" (*id.* ¶ 125); "Counterclaim Defendants' false statements constitute defamation per se" (*id.* ¶ 127); "Whether by defamation per se or by special harm, AS has suffered injury as AS's selling privileges related to Michael Kors Products have been suspended and AS has lost sales of Michael Kors Products and other products" (*id.* ¶ 129).

As to timing, New York law affords defamation claims a one-year statute of limitations. N.Y. C.P.L.R. § 215(3) (McKinney 2019). In their Amended Answer, Defendants allege that Plaintiffs sent four infringement notices to Amazon that were defamatory. (Am. Answer, ECF No. 21, Counterclaims ¶ 48.) Defendants allege that Plaintiffs sent one infringement notice in 2019. *Id.* Any defamation claims regarding that 2019 infringement notice were time-barred after December 31, 2020, and Defendants filed their Amended Answer on January 4, 2021. (*See* Am. Answer, ECF No. 21.) Defendants allege that Plaintiffs sent three infringement notices in 2020. (Am. Answer, ECF No. 21, Counterclaims ¶ 48.) Any defamation claims regarding 2020 infringement notices were only time-barred after January 1, 2021. Defendants' Amended Answer was filed on January 4, 2021, the first business day of 2021. Therefore, Defendants' defamation counterclaim as to the 2020 infringement notices is not time-barred. Defendants' Amended Answer thus alleges sufficient facts to contain a "facially

plausible" defamation counterclaim and Defendants should be given leave to file their 2020 defamation claims.

## CONCLUSION

For the foregoing reasons, the Court finds that Defendants' Amended Answer was timely filed as an answer, but that Counterclaims One, Two, and Three do not allege facts sufficient to state facially plausible claims and that leave to file these counterclaims should be denied. In contrast, Counterclaim Four, taking Defendants' allegations as true, is adequately pled. Accordingly, the undersigned magistrate respectfully recommends that Plaintiffs' Motion to Strike be denied, and in an exercise of discretion under Rule 15, Defendants should be denied leave to file Counterclaims One, Two, and Three, but granted leave to file Counterclaim Four, in part.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a), (e) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g.*, *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

**SO ORDERED.**

Dated: Brooklyn, New York
        August 27, 2021

_Taryn A. Merkl_
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE

27