UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------X

FOSSIL GROUP, INC. et al.,

                Plaintiffs,

        -against-

ANGEL SELLER LLC et al.,

                Defendants.

---------------------------------------------------------X

**REPORT & RECOMMENDATION**
20-CV-2441 (WFK) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

    Fossil Group, Inc. and Michael Kors, LLC ("Plaintiffs") bring this action against Angel Seller LLC and others ("Defendants") claiming that Defendants are selling counterfeit watches that infringe upon Michael Kors' trademarks through Defendant Angel Seller's Amazon.com store front. (Amended Complaint ("Am. Compl."), ECF No. 16, ¶¶ 1–2, 22–24.) In support of these claims, the Amended Complaint details Plaintiffs' purchase of several watches they assert are counterfeit from Defendant Angel Seller between August 2019 and September 2020, including a purchase made following commencement of this lawsuit. (*Id.* ¶¶ 27–42.) Defendants dispute these accusations, claiming that the products they sell are genuine. (Second Amended Answer ("Second Am. Answer"), ECF No. 115, Counterclaims ¶ 29.)

    On September 22, 2021, while various other motions were pending in this case, and prior to the Court's decision on Plaintiffs' motion to strike Defendants' amended

answer,[1] Plaintiffs filed a motion to expedite ruling on the Defendants' request for leave to amend their counterclaims, and for clarification regarding the scope of discovery in this case.[2] On September 23, 2021, the Honorable William F. Kuntz, II, referred Plaintiffs' motion to expedite to the undersigned Magistrate Judge for a Report and Recommendation. (Sept. 23, 2021 Order, ECF No. 93.) For the reasons that follow, Plaintiffs' motion to expedite should be denied as moot. Plaintiffs' requests for clarification on discovery should be granted in part and denied in part.

As for Plaintiffs' motion to expedite decision on Defendants' motion for leave to file amended counterclaims, an expeditious briefing schedule was already set in consultation with the parties on October 8, 2021.[3] (Oct. 8, 2021 ECF Minute Entry and Order.) Accordingly, the motion to expedite is now moot.

---

[1] Following the filing of the Complaint that initiated this case on June 2, 2020, Plaintiffs filed an Amended Complaint on November 13, 2020. (*See* ECF Nos. 1 & 16.) In response, Defendants first filed an Answer to the Amended Complaint on December 11, 2020, and then an Amended Answer on January 4, 2021. (*See* ECF Nos. 19 & 21.) Plaintiffs then moved to strike the Amended Answer, arguing that it was untimely filed, and that Defendants' counterclaims should be dismissed. (Pls.' Mot. to Strike, ECF No. 30.) On August 27, 2021, the undersigned Magistrate Judge issued a Report and Recommendation on the motion, recommending that the motion be denied, but that Defendants be granted leave to file one of their counterclaims as an exercise of the Court's discretion under Federal Rule of Civil Procedure 15. (Report & Recommendation, ECF No. 68.) On October 4, 2021, the Honorable William F. Kuntz, II, issued an order adopting the Report and Recommendation, and directing Defendants to file their amended answer in accordance with a schedule to be set by the undersigned Magistrate Judge. (Oct. 4, 2021 Order, ECF No. 103.) On October 8, 2021, the Court issued a scheduling order directing Defendants to file their Second Amended Answer with Counterclaims by October 13, 2021, in conformity with the Court's rulings on which counterclaims could be added. (Oct. 8, 2021 ECF Minute Entry and Order.) Defendants' Second Amended Answer was then filed on October 13, 2021. (ECF No. 115.)

[2] *See* Pls.' Mot. to Expedite ("Pls.' Mot."), ECF No. 88; Defs.' Resp. to Mot., ECF Nos. 96 (redacted) & 97-1 (unredacted).

[3] On October 8, 2021, Defendants were directed to file their motion to amend counterclaims, along with their proposed Third Amended Answer with Counterclaims and a blackline comparing the Second Amended Answer to the Third Amended Answer, by October 22, 2021, with Plaintiffs' response and Defendants' reply due November 10, 2021, and November 17, 2021, respectively. (Oct. 8, 2021 ECF Minute Entry and Order.)

Plaintiffs' request for clarification of the scope of discovery should be granted in part and denied in part as set forth below.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

By way of background, this case has been plagued by disputes and disagreements between the parties as to how to proceed on discovery matters, large and small, resulting in the filing of myriad discovery motions[4] and an appeal from a ruling on one of the discovery disputes, objecting to this Court's determination not to require disclosure of prior settlement agreements between Plaintiffs and third parties — which is also a topic of the pending motion for clarification. (*See* Pls.' Mot., ECF No. 88, at 2; Appeal of Magistrate Judge Decision, ECF No. 109.) At the Court's last conference on October 8, 2021, Plaintiffs even requested that the Court assist them in scheduling a meet and confer with Defendants, which was set for October 12, 2021. To put it mildly, discovery has not been going smoothly.

As noted above, Plaintiffs' instant motion includes a request for clarification regarding the scope of discovery while Defendants' request to amend their counterclaims is pending. (*See* Pls.' Mot., ECF No. 88.) Plaintiffs' core argument is that

---

[4] For example, the Court's Order dated September 23, 2021, which was issued after approximately two hours of oral argument, addressed multiple such pending motions, while the Court's minute entry directed further briefing on still others. (Sept. 23, 2021 Order, ECF No. 90; *see also* Oct. 8, 2021 ECF Minute Entry and Order; Oct. 9, 2021 Discovery Order, ECF No. 112 (resolving an additional pending motion and scheduling an *in camera* inspection of documents in dispute).)

As a consequence of the parties' demonstrated inability to resolve discovery disputes without court intervention, the parties are now required to meet and confer and request an informal conference with the Court prior to filing a motion under Rules 26 through 37 of the Federal Rules of Civil Procedure. (*See* Sept. 23, 2021 Order, ECF No. 90; Sept. 23, 2021 ECF Minute Entry and Order (providing that "no motion under Rules 26 through 37, inclusive, of the Federal Rules of Civil Procedure shall be heard unless counsel has met and conferred as required under Fed. R. Civ. P. 37, the moving party has first requested an informal conference with the Court by letter motion **of no more than three pages** for a pre-motion discovery conference, and such request has either been denied or the discovery dispute has not been resolved as a consequence of such a conference") (emphasis in original).)

3

some of Defendants' requests are burdensome, irrelevant, and "probe into highly sensitive and confidential documents unrelated to Defendants or their conduct." (*Id.* at 1.) Plaintiffs' motion further observes that Defendants have indicated their intention to move to file counterclaims under RICO, and, as Plaintiffs see it, Defendants appear to be making discovery requests "in an attempt to find support for their meritless [RICO] allegations." (*Id.* at 1–2.) Specifically, Plaintiffs aver that Defendants' request for "all settlement agreements entered into between Plaintiffs and certain sellers as identified on a Purchase Log" is in furtherance of the allegation, included in Defendants' proposed RICO counterclaim, that an attorney for Plaintiffs accepted payments from third parties "'in response to baseless counterfeiting allegations.'" (*Id.* at 2 (quoting Ex. A, ECF No. 107-1, Request No. 104; Defs.' Proposed First Amended Counterclaims, ECF No. 55-1, ¶ 167).) Plaintiffs also argue that the following additional requests are inappropriate, because they are outside the scope of discovery given the current allegations in this case:

> [I]nformation and documents regarding *every* test purchase Fossil has made of Michael Kors products; and *every* system, method, and technique Fossil has used to mark, track, or trace Michael Kors products, including equipment; and a broad swath of communications, such as those between Plaintiffs, including their counsel, and sellers of products subject to test purchases, as well as communications between and among Plaintiffs' employees.

*Id.* (emphasis in original).[5]

Defendants' response to Plaintiffs' motion counters that the discovery they seek is relevant and that the timing of their requests does not warrant an inference that the disputed discovery is being sought to bolster Defendants' proposed RICO claim. (*See*

---

[5] Defendants' specific discovery requests were filed by Plaintiffs as sealed exhibits to Plaintiffs' Motion for Leave to File Under Seal (ECF No. 107) at Ex. A (Defendants' Third Set of Requests), ECF No. 107-1, and Ex. B (Defendant Angel Seller's Third Set of Interrogatories), ECF No. 107-2.

4

*generally* Defs.' Resp. to Mot., ECF Nos. 96 (redacted) & 97-1 (unredacted).) As to the discoverability of settlement agreements, Defendants specifically contend that they are "highly relevant" to an evaluation of the statutory damages range under the Lanham Act, and as evidence of the Plaintiffs' "motivation" for making the alleged statements that are the subject of Defendants' defamation counterclaim. (*Id.* at 2–3; *see also* Second Am. Answer, ECF No. 115, Counterclaim ¶¶ 69–84.) Notably, when asked why the settlement agreements should be discoverable in this case at oral argument on September 23, 2021, counsel for Defendants argued that the settlement agreements are relevant to damages (*see* Sept. 23, 2021 Tr., ECF No. 110, at 34:17–18), including statutory damages, and that "it's also related to the efforts the plaintiffs have made to coerce third parties into making settlements or making payments to resolve what we think are equally baseless claims." (*Id.* at 41:16–19).[6]

For the reasons that follow, the Court respectfully recommends that Plaintiffs' motion for clarification regarding the scope of discovery be granted, in part, to clarify that Defendants' requests for the production of settlement agreements with third parties should be denied.[7] Plaintiffs' remaining requests for clarification should be denied, however, because certain other categories of disclosures, such as Plaintiffs' spreadsheet of prior test purchases, and discovery issues touching upon Plaintiffs' methodologies

---

[6] When pressed further at oral argument as to how Plaintiffs' settlement agreements with third parties are relevant to this case, Defendants' counsel reiterated that they are relevant to damages — statutory or otherwise — intent, and defamation, and "also relate[] to what we were talking about earlier . . . the spreadsheet of purchases and understanding who these sellers were that were targeted." (Sept. 23, 2021 Tr., ECF No. 110, at 43:20–23; *see also id.* at 44.)

[7] The Court notes that the disclosure of settlement agreements was also a topic of Defendants' July 16, 2021 Motion to Compel Discovery Requests (ECF No. 51), which request was denied by the undersigned Magistrate Judge following lengthy oral argument on a number of motions on September 23, 2021 (*see* Sept. 23, 2021 ECF Minute Entry and Order; Sept. 23, 2021 Order, ECF No. 90). Defendants appealed that denial on October 7, 2021. (Appeal of Magistrate Judge Decision, ECF No. 109.)

5

for detecting counterfeiting, are currently under review as part of another motion (*see* Defs.' Mot. to Compel & De-Designate, ECF Nos. 79 (redacted) & 85 (unredacted)), and certain documents that were filed as exhibits in connection with that motion are presently before the Court for an *in camera* review.

## DISCUSSION

I. <u>Legal Standards</u>

   A. <u>Federal Rule of Civil Procedure 26(b)(1)</u>

Federal Rule of Civil Procedure 26(b)(1) provides, in pertinent part, that: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Rule 26(b)(1) also provides that when determining whether something is discoverable, courts can consider "whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Discovery rules should be broadly interpreted to achieve their purposes. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 756 F.2d 230, 236 (2d Cir. 1985). The purposes of discovery include "avoiding surprise, fully disclosing the nature and scope of the controversy, narrowing, simplifying, and framing the issues involved, and enabling parties to obtain the factual information needed to prepare for trial." *Gary Plastic Packaging Corp.*, 756 F.2d at 236. The burden of demonstrating relevance falls on the party seeking discovery. *Callaway Golf Co. v. Corporate Trade Inc.*, No. 10-CV-1676 (GBD) (JCF), 2011 WL 1642377, at *3 (S.D.N.Y. Apr. 25, 2011).

In deciding discovery matters, Courts should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery

outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The Court has "broad discretion" in determining relevance for discovery purposes. *Michael Kors, L.L.C. v. Su Yan Ye*, No. 18-CV-2684 (KHP), 2019 WL 1517552, at *2 (S.D.N.Y. Apr. 8, 2019). Under the Federal Rules of Civil Procedure, relevance must be "'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense." *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14-CV-9792 (WHP) (JCF), 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015) (quoting *Oppenheimer Fund, Inc.*, 437 U.S. at 351).

B. Discovery of Settlement Agreements

As a threshold matter, it is well settled that "[s]ettlement agreements and negotiations are not protected from disclosure as privileged." *Gov't Emps. Ins. Co. v. Cean*, No. 19-CV-2363 (PKC) (SMG), 2020 WL 9812909, at *1 (E.D.N.Y. Nov. 12, 2020). As Judge Sweet observed many years ago, the key question in determining whether a settlement agreement should be disclosed is relevance: "Although litigants cannot shield a settlement agreement from discovery merely because it contains a confidentiality provision, or was filed under seal, discovery of such an agreement is only appropriate *if it is itself relevant to the subject matter of the action, or is likely to lead to relevant evidence.*" *ABF Cap. Mgmt. v. Askin Cap.*, No. 95-CV-8905 (RWS), 2000 WL 191698, at *2 (S.D.N.Y. Feb. 10, 2000) (emphasis added).

As one court has observed, courts in our Circuit have taken varying approaches to determining whether a prior settlement agreement should be disclosed in discovery:

> While courts in this Circuit disagree as to the standard that applies to the discovery of settlement agreements, the majority hold that the required showing of relevance is no higher for settlements than it is for the discovery of other kinds of information. Nonetheless, courts routinely refuse to afford defendants access to settlement agreements that they deem irrelevant. . . . Courts routinely hold that settlement agreements may be withheld until after trial. In order to be discoverable earlier, there must

7

> be a "particularized showing of a likelihood that admissible evidence will be generated by the dissemination of the terms of a settlement agreement."

*King County, Wash. v. IKB Deutsche Industriebank AG*, 09-CV-8387 (SAS), 2012 WL 3553775, at *1 (S.D.N.Y. Aug. 17, 2012) (footnotes omitted) (quoting *Bottaro v. Hatton Assocs.*, 96 F.R.D. 158, 160 (E.D.N.Y. 1982)); *see also Gov't Emps. Ins. Co.*, 2020 WL 9812909, at *1 ("Other courts have declined to require a heightened showing of relevance before ordering disclosure.").

In addition, some courts have applied "a modest presumption against disclosure of settlement negotiations in those circumstances in which disclosure seems likely to chill parties' willingness to make the sort of disclosures in settlement discussions that are necessary to achieve agreement." *United States v. Am. Soc. of Composers, Authors & Publishers*, No. 13-CV-95, 1996 WL 157523, at *2 (S.D.N.Y. April 3, 1996) (internal quotation marks and citations omitted) (collecting cases); *see id.* (observing that the presumption is rebuttable "based on an adequate showing of need and of available methods for minimizing the potential for harm that may flow from disclosure"). Regardless of whether a court applies a modest presumption against disclosure of settlement agreements or no heightened standard, the party seeking disclosure bears the burden of establishing relevance.

On the more narrow question of relevance for an ascertainment of damages, courts in the Second Circuit have consistently held that settlement documents may not be deemed relevant when production is sought to evaluate damages for purposes of settlement. *See Griffin v. Mashariki*, No. 96-CV-6400 (DC), 1997 WL 756914, at *2 (S.D.N.Y. Dec. 8, 1997) ("[Defendant's] argument that disclosure of the statement will facilitate settlement of her case because she is similarly situated to [a third party] does not provide a proper basis for disclosure, except in the sense that full disclosure

8

generally promotes realistic case assessment. Relevance, not simply promotion of settlement, must be the touchstone."); *see also Wells Fargo Bank, N.A. v. National Gasoline, Inc.*, 10-CV-1762 (RER), 2013 WL 12357753, at *2 (E.D.N.Y. Dec. 31, 2013) (denying defendants argument for disclosure of previous settlement agreements on the theory that they were relevant to make an informed effort at settlement because "[r]elevance, not simply promotion of settlement, must be [the] touch[s]tone" (citing *Griffin*, 1997 WL 756914, at *2)).

II. Analysis

    A. Plaintiffs' Request for Clarification Regarding Discovery Relating to Plaintiffs' Trademark Enforcement Efforts and Settlement Agreements

In response to Plaintiffs' motion for clarification, Defendants reiterate their request for the "production of settlement agreements, cease and desist letters, and related correspondence with third parties." (Defs.' Resp. to Mot., ECF No. 97-1, at 2 (quoting ECF No. 90, at 2).)[8] As set forth above, Defendants' primary argument as to the relevance of their request for settlement documents is that the documents are pertinent to evaluating damages under the Lanham Act. (*See* Defs.' Resp. to Mot., ECF No. 97-1, at 2.) The other proffered bases set forth in Defendants' briefing and at oral argument on September 23, 2021, include the contention that the settlement agreements could yield information about other sellers who, Defendants aver, were "coerced" into settlement, and that the settlement agreements will shed light on Plaintiffs' "motivation

---

[8] Given the various iterations of the parties' arguments, scattered across documents on the docket, it is difficult to ascertain with certainty Defendants' current, operative discovery demand on this issue. As set forth in the sealed exhibits Plaintiffs filed on October 6, 2021 (*see* ECF No. 107), which appear to have been submitted in relation to the instant motion, Defendants' Third Set of Requests may be narrower than Defendants' previous requests. (*Compare* Ex. A, ECF No. 107-1, Request No. 103–104, *with* Ex. C, ECF No. 51-3, Request Nos. 11–13.) The lack of precision as to what is even in dispute illustrates the parties' failure to meet and confer properly, *see infra* note 12, and also lends further support for the Court's conclusion that Defendants have failed to meet their burden to establish relevance.

9

for making the alleged defamatory statements." (*Id.* at 3; Sept. 23, 2021 Tr., ECF No. 110, at 41:16–19 (arguing that settlement agreements and enforcement efforts are relevant to Plaintiffs' efforts to coerce third parties).)

On the question of damages, as discussed above, many courts have held that discovery of settlement agreements must turn on relevance, not merely calculation of damages for purposes of settlement. *See, e.g., Griffin*, 1997 WL 756914, at *2; *Wells Fargo Bank, N.A.*, 2013 WL 12357753, at *2. In this case, Defendants hotly contest Plaintiffs' allegations and have not argued that the damages figures are needed for the purposes of settlement discussions, nor has there been any determination on liability.[9] It is, accordingly, puzzling why Defendants continue to cite calculation of damages as one of their primary arguments for compelling disclosure of sensitive, confidential documents. To the extent that the settlement agreements become relevant later in the case on questions of damages if and when liability is established, it is conceivable the settlement agreements could be disclosed at that time if appropriate. *See King County, Wash.*, 2012 WL 3553775, at *1 (observing that courts routinely withhold settlement agreements until after trial). At this juncture, however, Defendants' argument that evidence of Plaintiffs' settlement agreements should be disclosed to ascertain damages is not persuasive.

---

[9] At oral argument, counsel for Defendants asserted, in conclusory fashion, that Plaintiffs' prior confidential settlement paperwork would be relevant to statutory damages, without explaining why Plaintiffs' prior settlement practices could be used as precedent or how they would be relevant to the specific claims in this case. (*See, e.g.*, Sep. 23, 2021 Tr., ECF No. 110, at 34:15–35:1, 41:12–16, 44:8–16.) Defendants also argued that prior settlements could be relevant so "we know that that might be a reasonable payment one day if liability is found. So their settlement agreements bear directly on what the damages would be, whether statutory or otherwise." (*Id.* at 43:14–17.) Although Defendants are understandably curious about Plaintiffs' prior settlements, to the extent they seek this information for their own case assessment and to ascertain possible damages in order to determine whether they should seek to settle this case, that "does not provide a proper basis for disclosure . . . . Relevance, not simply promotion of settlement, must be the touchstone." *Griffin*, 1997 WL 756914, at *2.

Notably, the two cases cited by Defendants on this issue in their opposition to Plaintiffs' motion for clarification do not provide compelling authority for the broad disclosures Defendants seek. (*See* Defs.' Resp. to Mot., ECF No. 97-1, at 2–3.) First, Defendants cite to *Chanel, Inc. v. Schwartz*, No. 06-CV-3371-1 (BMC) (JO), 2007 WL 4180615, at *1 (E.D.N.Y. Nov. 19, 2007), which, in the context of analyzing a default judgment motion, identifies the various factors the court should consider in reaching a damages award under the Lanham Act. In the second case Defendants cite, *Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*, 15-CV-8459 (LGS), 2016 WL 5936887, at *1 (S.D.N.Y. Oct. 11. 2016), the court found that the magistrate judge's determination to compel the disclosure of settlement agreements pertinent to trademark valuation was not clearly erroneous or contrary to law under 28 U.S.C. § 636(b)(1)(A),[10] and that the plaintiffs "did not cite case law or otherwise attempt to refute directly Defendants' argument that the agreements are probative *in this case.*" (emphasis in the original). Although the *Lifeguard Licensing Corp.* court upheld the magistrate judge's decision to order disclosure of settlement agreements on the facts of that case, the case does not stand for the general proposition that settlement agreements are necessarily relevant and discoverable in every trademark case, much less the proposition that a defendant being sued for trademark infringement can demand all evidence regarding the plaintiff's prior trademark enforcement efforts and settlement agreements.

In this case, the Amended Complaint sets forth specific trademark allegations, and Defendants-Counterclaimants have lodged a single defamation counterclaim. (*See generally* Am. Compl., ECF No. 16; Second Am. Answer, ECF No. 115.) Given the

---

[10] Title 28, United States Code, Section 636(b)(1)(A) provides, in pertinent part, that "[a] judge of the court may reconsider any pretrial matter [decided by a Magistrate Judge] under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."

relatively narrow scope of the allegations in the Complaint in this case, and the speculative nature of Defendants' arguments, Defendants have neither met their burden to establish relevance, nor have they made a "particularized showing of a likelihood that admissible evidence will be generated by the dissemination of the terms of a settlement agreement." *King County, Wash.*, 2012 WL 3553775, at *1.

Moreover, Defendants have not established that Plaintiffs' prior enforcement efforts and settlement agreements are, or will lead to, relevant evidence pertinent to Defendants' defamation counterclaim. The elements of defamation under New York law include: "(1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019). When the plaintiff is a private figure or entity, as the Defendants-Counterclaimants are in this case, the third element, "fault," only requires a showing of negligence. *See Lucking v. Maier*, No. 03-CV-1401 (NRB), 2003 WL 23018787, at *3 (S.D.N.Y. Dec. 23, 2003); *Rodriguez v. Daily News, L.P.*, 37 N.Y.S. 3d 613, 614 (2nd Dep't 2016). Against the backdrop of New York defamation law, Defendants have not demonstrated that Plaintiffs' past enforcement efforts or settlement agreements will provide evidence as to whether Plaintiffs acted negligently in reporting Defendants' alleged infringement to Amazon *in this case*. On some level, it appears that Defendants are seeking this discovery in an effort to find evidence from which to argue Plaintiffs' propensity to engage in defamatory conduct. Even if such evidence were admissible, Defendants' arguments are speculative and fail to demonstrate relevance. *See generally Biro v. Conde Nast*, 963 F. Supp. 2d 255, 285 (S.D.N.Y. 2013) (finding an allegation concerning an author's "defamatory propensities" based off a separate defamatory action to be "legally insufficient").

Overall, the Court finds Defendants' arguments to be unpersuasive, speculative, and lacking a clear articulation of relevance to the actual allegations in this case. Moreover, they are insufficient to require broad disclosures concerning Plaintiffs' prior enforcement efforts and settlement agreements, which would implicate the privacy interests of third parties.[11] Finally, given the scope of Defendants' discovery demand, as articulated in Defendants' response (Defs.' Resp. to Mot., ECF No. 97-1, at 2), Defendants' discovery requests as to prior enforcement efforts and settlement agreements are disproportionate to the needs of the case and should be denied in an exercise of discretion. *See* Fed. R. Civ. P. 26(b)(1).[12]

---

[11] *See, e.g.*, *Kent v. The New York State Public Employees Federation, AFL-CIO*, 17-CV-268 (GTS) (CFH), 2019 WL 457544, at *7 (N.D.N.Y. Feb. 5, 2019) ("Although this Court recognizes that the confidential nature of a settlement agreement does not automatically entitle defendants to a protective order, it finds significant the fact that parties to a confidential settlement agreement proceeded with the understanding that the terms of the settlement agreement would remain confidential amounts to a showing of good cause. Further, as the confidential settlement agreements would likely involve many nonparties, the Court must be cognizant of the privacy interests of those nonparties.").

[12] In addition to failing to establish relevance, the Court notes that the record demonstrates that the parties have not properly met and conferred regarding the scope of discovery on this issue. Federal Rule of Civil Procedure 37(a) requires the party filing a motion to compel to "include *a certification* that the movant has in good faith conferred or attempted to confer with the . . . party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a) (emphasis added). By way of background here, Defendants filed a motion to compel seeking broad discovery disclosures related to enforcement efforts and settlement agreements (*see* ECF No. 51, at 3), the denial of which is now on appeal to the Honorable William F. Kuntz, II. Although Defendants' motion makes a summary assertion that the parties met and conferred, it did not include a certification, in direct contravention of Rule 37(a), and contrary to E.D.N.Y. Local Rule 37.3(a). In response to Defendants' motion, Plaintiffs filed a declaration of attorney Michael Lee, Esq., which represents that Defendants' counsel had agreed to a more limited scope as to this request at a meet and confer held in May 2021. (*See* Decl. of Michael Lee, ECF No. 59-1, ¶ 14 ("During the parties May 2021 Meet and Confer, Defendants' counsel agreed to limit Defendants' request for settlement agreements to on or after September 2020.").) Without finding whether Mr. Lee's affidavit is accurate, the record demonstrates that Defendants failed to include a certification in their motion to compel, which rendered their initial motion to compel on this issue facially insufficient. In addition, as noted *supra* note 8, the exact discovery demand that is operative at this juncture is unclear from the parties' filings — further evidencing their failure to meet and confer, and underscoring Defendants' failure to properly establish relevance of the specific discovery they seek.

B.  <u>Plaintiffs' Requests for Clarity Regarding Other Types of Discovery</u>

As set forth above, Plaintiffs also aver that Defendants' requests regarding certain other categories of disclosures, such as a spreadsheet of prior test purchases Plaintiffs made from other sellers, and Plaintiffs' various methodologies for detecting counterfeiting, are too broad. (Pls.' Mot., ECF No. 88, at 2.) Based on how their objection is framed, as well as developments in the case between the time Plaintiffs filed their motion on September 22, 2021, and today, the Court respectfully recommends that this aspect of Plaintiffs' motion be denied without prejudice. As set forth in the minute entry for the October 8, 2021 conference, the Court is undertaking an *in camera* review of various documents, including the spreadsheet of prior test purchases (*see* ECF No. 85-2), and has directed the parties to meet and confer regarding other disputes (*see* Oct. 8, 2021 ECF Minute Entry and Order). For these reasons, it would be premature to issue any rulings at this time regarding "*every* test purchase" and/or "*every* system, method, and technique Fossil has used" to detect counterfeiting. (Pls.' Mot., ECF No. 88, at 2.) The Court has also reminded the parties of their obligation to meet and confer and directed them on how to raise their discovery disputes expeditiously and clearly in an effort to stem the flood of discovery motions and related filings in this case. For these reasons, the Court respectfully recommends that this aspect of Plaintiffs' motion be denied without prejudice.

## CONCLUSION

For the foregoing reasons, the Court recommends that Plaintiffs' motion be granted in part and denied in part. Plaintiffs' request for an expedited ruling on Defendants' motion to amend to add counterclaims should be denied as moot since that motion is being briefed on an expedited schedule in accordance with the Court's October 8, 2021 Order. Plaintiffs' motion for clarification regarding the scope of

discovery as to prior settlement agreements and enforcement efforts should be granted, and Defendants' request for disclosure of these items should be denied given Defendants' failure to establish the relevance of this discovery in light of how the case is currently pled, and its current procedural posture. The Court further recommends denying without prejudice Plaintiffs' request for clarification regarding certain other discovery requests, such as the spreadsheet of prior purchases, and Plaintiffs' various methodologies for detecting counterfeiting, since aspects of these discovery disputes are currently under review in the context of other motions. (*See* Defs.' Letter Mot. to Compel, ECF No. 79 (redacted) & ECF No. 85 (unredacted).)

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a), (e) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g.*, *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

**SO ORDERED.**

Dated: Brooklyn, New York
       October 22, 2021

*Taryn A. Merkl*
—————————————————
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE