UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------X

FOSSIL GROUP, INC. et al.,

                    Plaintiffs,

       -against-

ANGEL SELLER LLC et al.,

                   Defendants.

---------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**
20-CV-2441 (HG) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

      This case, which started out as a trademark enforcement action, has become a war. In June 2020, Fossil Group, Inc. and Michael Kors, LLC ("Plaintiffs") originally brought this action against Angel Seller LLC and others ("Defendants") claiming that Defendants were selling counterfeit watches that infringed upon Michael Kors' trademarks through Defendant Angel Seller's Amazon.com store front. (*See* Complaint ("Compl."), ECF No. 1; Amended Complaint ("Am. Compl."), ECF No. 16, ¶¶ 1–2, 22–24.) In support of these claims, the Amended Complaint details Plaintiffs' purchase of several watches they assert are counterfeit from Defendant Angel Seller between August 2019 and September 2020, including a purchase made following commencement of this lawsuit. (Am. Compl., ECF No. 16, ¶¶ 27–42.) Defendants dispute these accusations, claiming that the products they sell on Defendant Angel Seller's website are legitimate. (Amended Answer ("Am. Answer"), ECF No. 21, ¶ 22–24, Counterclaims ¶ 29.)

Currently pending before this Court is Defendants' latest salvo:[1] their motion to file another amended answer, to include counterclaims brought under the Racketeer Influenced and Corrupt Organizations (RICO) statute. (Mot. for Leave to Amend Counterclaims, ECF Nos. 123 (redacted) & 124 (unredacted).) Plaintiffs object. For the reasons that follow, Defendants' motion should be denied.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

## I. Factual Allegations in the Complaint and Defendants' Original Counterclaims

This case commenced on June 2, 2020, with the filing of the original complaint. (Compl., ECF No. 1.) Shortly thereafter, the Hon. James Orenstein entered a scheduling order that set November 16, 2020, as the "[d]eadline for joinder of additional parties and amendment of pleadings." (Scheduling Order, ECF No. 14, at 1.)

Following entry of the scheduling order, Plaintiffs filed an amended complaint on November 13, 2020, in which they allege, *inter alia*, that Plaintiffs Fossil Group and Michael Kors are the designers and distributors of some of "the most iconic, world-famous, and recognizable time pieces in the world." (Am. Compl., ECF No. 16, ¶ 1.) Plaintiffs further allege that, despite being put on notice, Defendants have distributed, and continued distributing, counterfeit and knock-off watches that infringe on Michael Kors' distinctive watches, which are made and distributed by Fossil Group. (*Id.* ¶¶ 2–3.) Plaintiffs also contend that, by engaging in this conduct, Defendants have created a strong likelihood of confusion among consumers and have tarnished the goodwill

---

[1] As previously noted by this Court, "this case has been plagued by disputes and disagreements between the parties as to how to proceed on discovery matters, large and small," resulting in myriad motions, numerous requests for judicial assistance to resolve discovery disputes (involving Defendants and third parties associated with Defendants), and even a request that the Court schedule a discovery conferral for the parties. *Fossil Grp., Inc. v. Angel Seller LLC,* No. 20-CV-2441 (WFK) (TAM), 2021 WL 5181308, at *2 (E.D.N.Y. Oct. 22, 2021), *report and recommendation adopted*, 2021 WL 5177681 (E.D.N.Y. Nov. 8, 2021).

associated with Plaintiffs and the watches they manufacture. (*Id.* ¶ 3.) Accordingly, Plaintiffs allege claims of trademark counterfeiting, in violation of 15 U.S.C. § 1114; trademark infringement, in violation of 15 U.S.C. § 1114; unfair competition, false designation of origin and false description, in violation of 15 U.S.C. § 1125(a); trademark dilution, in violation of 15 U.S.C. § 1125(c); and unfair and deceptive business practices, in violation of the New York General Business Law, Section 349. (*Id.* ¶¶ 51–87.) Plaintiffs additionally allege that after filing this very case, Defendants' offers for sales and sales of infringing products continued. (*Id.* ¶ 39.)

Defendants vigorously contest Plaintiffs' allegations, claiming that the Michael Kors watches sold on Angel Seller's website were genuine. In response to Plaintiffs' November 2020 amended complaint, Defendants filed an answer on December 11, 2020. (*See* Answer, ECF No. 19.) Then, on January 4, 2021, without seeking leave of court, Defendants filed an amended answer that included four counterclaims, alleging that (1) Defendant Angel Seller was entitled to a declaratory judgment finding that it has not sold counterfeit Michael Kors products or violated Michael Kors' or Fossil Group's trademarks or other rights (Am. Answer, ECF No. 21, Counterclaims ¶¶ 69–79); (2) Plaintiffs engaged in false or misleading representations and unfair competition, in violation of 15 U.S.C. § 1125(a) (*id.* ¶¶ 80–97); (3) Plaintiffs engaged in tortious interference with Defendants' contract and business relations with Amazon (*id.* ¶¶ 98–115); and (4) Plaintiffs' actions constituted defamation (*id.* ¶¶ 116–31). Plaintiffs thereafter moved to strike or dismiss all of Defendants' counterclaims. (Am. Answer, ECF No. 21, Counterclaims ¶¶ 69–131; *see* Mot. to Strike Am. Answer, ECF No. 30.) The Court denied Defendants leave to file three out of the four counterclaims, but permitted Defendants to file a second amended answer that included a defamation claim against

3

Plaintiffs. *See Fossil Grp., Inc. v. Angel Seller LLC*, No. 20-CV-2441 (WFK) (TAM), 2021 WL 5409605, at \*14 (E.D.N.Y. Aug. 27, 2021), *report and recommendation adopted*, 2021 WL 4520030 (E.D.N.Y. Oct. 4, 2021).

## II. Defendants' Proposed Third Amended Answer

Defendants now request leave to file a third amended answer, seeking to include RICO counterclaims against Plaintiffs. (*See* Mot. for Leave to File Amended Counterclaim, ECF Nos. 123 & 124.) The proposed RICO allegations claim that Plaintiffs Fossil and Michael Kors, together with their former attorney, Michael Lee, formed an enterprise "for the common purpose of preventing third parties from reselling genuine Michael Kors Products for their own financial gain." (Proposed Third Amended Answer ("PTAA"), containing proposed counterclaims II & III, ECF No. 123-2, ¶ 189.)[2] Defendants' PTAA further alleges that the participants in the enterprise committed multiple acts of extortion, in violation of 18 U.S.C. § 1951, and wire fraud, in violation of 18 U.S.C. § 1343. (*Id.* ¶¶ 196, 199.) In a nutshell, Defendants claim that the RICO enterprise operated in the following manner:

> The Enterprise operates using the same model as a classic "protection racket." It creates a problem (i.e., a bogus allegation of counterfeiting), and then the Enterprise offers to solve that "problem" if the seller is willing to fork over money for protection — protection from the problem that the Enterprise itself is threatening.

(*Id.* ¶ 109.)

---

[2] The Court notes that Defendants' third proposed amended answer re-starts the paragraph numbering with the counterclaims. All references herein to "PTAA" pertain to the counterclaims unless otherwise indicated. (*See* PTAA, ECF No. 123-2, ¶¶ 1–217, at pages 10–53.) Defendants have filed the proposed third amended answer three times, as well as a blackline version. (*See* ECF Nos. 123-2, 124-3, 125-1 & 125-2.) For ease of reference, the Court refers to the unredacted version herein, ECF No. 123-2, whenever possible, with infrequent references to one of the redacted versions, ECF No. 124-3.

As to the nature and purpose of the alleged RICO predicate acts, Defendants claim that:

> Fossil, [Michael Kors], and Lee committed the acts of wire fraud, and conspired to commit wire fraud, by, *inter alia*: (1) submitting false reports to Amazon and Walmart, by email and other electronic means, that falsely alleged that the genuine Michael Kors Products sold by third parties were "counterfeit"; and (2) sending demand letters via electronic means to third parties reselling genuine Michael Kors Products that falsely alleged that the genuine Michael Kors Products sold by third parties were "counterfeit" and threatening litigation and/or complaints to Amazon unless the third parties meet Counterclaim Defendants' [Plaintiffs'] demand for payment.

(*Id.* ¶ 197.) The PTAA also includes lengthy detailed factual assertions regarding Plaintiffs' conduct in this litigation and with regard to other sellers. (*See, e.g.*, PTAA, ECF No. 123-2 & PTAA (unredacted), ECF No. 124-3, ¶¶ 84–91; PTAA, ECF No. 123-2, ¶¶ 102–07; PTAA, ECF No. 123-2 & PTAA (unredacted), ECF No. 124-3, ¶¶ 112–140.) In addition, it details, at length, the history of the instant case from Defendants' perspective, asserting that Plaintiffs' allegations in this matter are a "sham." (*See, e.g.*, PTAA, ECF No. 123-2 & PTAA (unredacted), ECF No. 124-3, ¶¶ 141–71.)

Leave to file Defendants' proposed RICO counterclaims should be denied for several reasons. First, permitting Defendants to file the proposed RICO counterclaims would substantially broaden and delay this already-fraught litigation, which would result in significant undue prejudice to Plaintiffs. Second, Defendants' proposed RICO counterclaims are not properly pled under *Twombly* and *Iqbal*, principally because they fail to plausibly allege a RICO enterprise for two reasons: (1) the claims do not allege the existence of a RICO person distinct from the alleged RICO enterprise; and (2) the allegations fail to adequately articulate a cognizable RICO enterprise structure and describe how each enterprise member conducted and participated in the affairs of the

enterprise itself. Accordingly, the Court respectfully recommends that Defendants'
motion be denied.

## DISCUSSION

### I. Standards Applicable to Motions to Amend Counterclaims

Counterclaims must meet the standards applicable to all pleadings established
by *Twombly* and *Iqbal*. *GEOMC Co., Ltd., v. Calmare Therapeutics, Inc.*, 918 F.3d 92, 99 (2d
Cir. 2019). "To survive a motion to dismiss, a complaint must contain sufficient factual
matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft
v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570
(2007)). "A claim has facial plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the defendant is liable for the
alleged misconduct." *Id.*

It is well established that "the grant of leave to amend the pleadings pursuant to
Rule 15(a) is within the discretion of the trial court." *Zenith Radio Corp. v. Hazeltine
Research, Inc.*, 401 U.S. 321, 330 (1971). "However, under Fed. R. Civ. P. 15(a), leave to
amend a pleading may *only* be given when factors such as undue delay or undue
prejudice to the opposing party are absent." *SCS Commc'ns, Inc. v. Herrick Co.*, 360 F.3d
329, 345 (2d Cir. 2004) (emphasis in original). Of particular relevance here, in analyzing
whether to grant leave to file new counterclaims, the Second Circuit has held that courts
must look to whether a proposed amendment would prejudice the opposing party or
"unduly expand" the litigation. *GEOMC Co.*, 918 F.3d at 101; *see also Fair Hous. Just. Ctr.,
Inc. v. Pelican Mgmt., Inc.*, No. 18-CV-1564 (ER), 2020 WL 4262291, at *4 (S.D.N.Y. July
24, 2020); *Hybrid Athletics, LLC v. Hylete, LLC*, No. 17-CV-1767 (VAB), 2019 WL 4143035,
at *14 (D. Conn. Aug. 30, 2019) ("[T]he Court finds that the risk of undue prejudice to
[plaintiff] from this amendment is minimal, as it does not appear resolution of this

counterclaim would require any additional discovery, or turn on any genuine dispute of material fact."), *reconsideration denied sub nom. Hybrid Athletics, LLC v. Hylete, Inc.*, No. 17-CV-1767 (VAB), 2019 WL 4957921 (D. Conn. Oct. 8, 2019).

As the Second Circuit observed in *GEOMC*, the law on "whether a new counterclaim may respond as broadly as one included in an answer to an original complaint or whether it must respond only to the new allegations of an amended complaint" had been somewhat unresolved, with courts in this circuit adopting different approaches. *GEOMC Co.*, 918 F.3d at 99. Accordingly, the *GEOMC* court addressed this question in some detail:

> We think resolution of this issue depends on how far into the litigation the new counterclaim is asserted. If an amended answer with a new counterclaim is presented at an early stage of the litigation, the new counterclaim may normally be as broad as those filed in response to an original complaint. At a late stage of the litigation, however, a new counterclaim that raises issues beyond the scope of the new claims made in the most recent amended complaint will usually cause escalating prejudice to the counterdefendant and undue expansion of litigation that the court is charged with managing; for those reasons a new counterclaim should normally not be permitted if it exceeds the scope of the plaintiff's new claims. "As a general rule, the risk of substantial prejudice increases with the passage of time."

*GEOMC Co.*, 918 F.3d at 100 (quoting 6 Wright & Miller § 1488 (3d ed.)). *See also Sacerdote v. New York Univ.*, 9 F.4th 95, 115 (2d Cir. 2021) (setting forth the relevant standards for amending pleadings depending on timing and procedural history), *cert. denied*, 142 S. Ct. 1112 (2022).[3]

---

[3] Plaintiffs argue that Defendants' proposed amended complaint is untimely under the scheduling order in the case, and that they cannot establish "good cause" under Rule 16(b) to permit the amendment. (*See* Pls.' Mem. in Opp'n, ECF No. 139, at 30–32.) In *Sacerdote*, however, the Second Circuit found that the district court abused its discretion by applying the "good cause" standard when the scheduling order at issue did not set an "expiration date after which all amendments were prohibited, which would have triggered the stricter Rule 16(b)(4) 'good cause' standard." *Sacerdote*, 9 F.4th at 115. Although the language of the underlying scheduling order in *Sacerdote* and the scheduling order in this case differs, the Court need not decide

## II. Defendants' Proposed RICO Counterclaims Would Unduly Expand the Litigation and Result in Undue Prejudice

Under *GEOMC Co.*, the Court must consider (1) "how far into the litigation" the new counterclaims are asserted, and (2) whether the proposed counterclaims raise issues beyond the scope of the new claims in the latest amended complaint. *GEOMC Co.*, 918 F.3d at 100; *see also Thor 680 Madison Ave. LLC v. Qatar Luxury Grp. S.P.C.*, No. 17-CV-8528 (PGG), 2022 WL 836890, at *8 (S.D.N.Y. Mar. 21, 2022). On the question of timing, as set forth above, Defendants moved for leave to amend their counterclaims in October 2021, approximately 16 months into the litigation.[4] The new proposed

---

whether the wording of the scheduling order here triggered the good cause standard. (*Compare* Scheduling Order, *Sacerdote v. New York Univ.*, No. 16-CV-6284 (AT) (VF) (S.D.N.Y. Dec. 5, 2016), ECF No. 43 (providing that "[a]mended pleadings may not be filed, and no party may be joined, without leave of Court more than 10 days after the filing of this Order or the filing of a responsive pleading, whichever occurs first"), *with* Scheduling Order, *Fossil Grp., Inc. v. Angel Seller LLC*, No. 20-CV-2441 (HG) (TAM) (E.D.N.Y. Aug. 26, 2020), ECF No. 14 (setting "[d]eadline for joinder of additional parties and amendment of pleadings"). "[T]he Court finds that [Defendants] ha[ve] failed to meet even the more liberal standard of Rule 15(a), and thus the Court need not determine whether [Defendants] ha[ve] demonstrated 'good cause.'" *Fido's Fences Inc. v. Canine Fence Co.*, No. 08-CV-754 (LDW) (AKT), 2009 WL 10709094, at *5 (E.D.N.Y. Oct. 5, 2009).

[4] The Court notes that Defendants indicated their intention to seek to amend with RICO counterclaims as early as July 2021, approximately 13 months into the litigation, with the filing of a pre-motion conference letter. (*See* Letter Mot., ECF No. 54.) At the time this pre-motion conference letter was filed, motion practice regarding Defendants' second amended answer was well underway. *See Fossil Grp., Inc. v. Angel Seller LLC*, No. 20-CV-2441 (WFK) (TAM), 2021 WL 5409605, at *14 (E.D.N.Y. Aug. 27, 2021), *report and recommendation adopted*, 2021 WL 4520030 (E.D.N.Y. Oct. 4, 2021). Shortly after Defendants were granted leave to file one of their counterclaims, the Court granted Defendants' request for a pre-motion conference and set a briefing schedule for the instant motion. (*See* Oct. 4, 2021 Order Adopting Report & Recommendation, ECF No. 103; Oct. 5, 2021 ECF Order (granting Defendants' pre-motion conference letter); Oct. 8, 2021 Minute Entry and Order (setting briefing schedule).) During the pendency of the current motion to amend, the Court observes that the parties have filed at least seven discovery motions between October 2021 and July 2022, not including various additional motions to seal filings and transcript sections due to the parties' concerns about trade secrets and confidentiality. (*See, e.g.*, ECF No. 127 & 129 (redacted and unredacted versions); ECF Nos. 130, 153, 158, 166, 167 & 186.) Filing numerous motions is, of course, not a ground to deny any party the opportunity to file an appropriate amended pleading, and the Court does not consider this additional period of delay in determining whether the filing of Defendants' counterclaims would cause undue prejudice. However, what the motion practice and history of this case illustrate is the high risk of prolonged additional delay and concomitant prejudice to Plaintiffs if this case were expanded to include Defendants' far-flung RICO allegations.

counterclaims are not, however, in response to an intervening amendment of the complaint. The complaint in this case has not been amended since November 13, 2020. (Am. Compl., ECF No. 16.) As to scope, given the length and breadth of the proposed amendments included in Defendants' PTAA, and the fact that they seek to add multi-year RICO allegations, there is no question that the proposed new counterclaims "raise[] issues beyond the scope of the new claims made in the most recent amended complaint." *GEOMC Co.*, 918 F.3d at 100.

The Court finds that both of the questions that must be examined under the *GEOMC* framework weigh against Defendants here. As to timing, the Court is cognizant that Defendants first signaled their interest in adding RICO claims as early as July 2021, and that expert discovery is still open. (*See* Mot. for Extension of Time, ECF No. 188; June 8, 2022 ECF Order on Mot. for Extension of Time (setting deadlines in June 2022 and August 2022 for the exchange of expert reports).) However, at this point in time, with the exception of third-party discovery disputes, fact discovery is largely complete. (*See* Apr. 7, 2022 ECF Minute Entry and Order (setting the deadline for the close of fact discovery as May 13, 2022); Mot. for Extension of Time, ECF No. 188 (requesting extensions of expert discovery deadlines but not the fact discovery deadline, which had already passed).) Importantly, though, the risk of prejudice to Plaintiffs continues to grow with the passage of time. *GEOMC Co.*, 918 F.3d at 100 (quoting 6 Wright & Miller § 1488). To grant the proposed amendment would likely result in the expenditure of significant additional resources and a substantial delay in the resolution of this case as Plaintiffs will undoubtedly seek to file a motion to dismiss the counterclaims, and, if filed, the RICO claims would necessitate a lengthy period of time for additional fact and expert discovery. *See generally Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (identifying prejudice in the context of a motion to amend as

including whether the proposed amendment would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction"). (*See also* Pls.' Mem. in Opp'n, ECF No. 139, at 32 (discussing prejudice).) Here, the timing of the proposed amendment weighs against granting leave to amend, but only slightly.

More troublingly, the proposed RICO counterclaims far exceed the allegations in Plaintiffs' most recently amended complaint, to which Defendants have already answered twice. In the context of this litigation, the counterclaims are no mere response to the amended complaint — they are a declaration of war. It has been frequently observed that: "Civil RICO is an unusually potent weapon — the litigation equivalent of a thermonuclear device." *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991); *see, e.g., Gutterman v. Herzog*, No. 20-CV-1081 (AMD) (LB), 2020 WL 6728787, at *3 (E.D.N.Y. Nov. 16, 2020); *Bell v. Hubbert*, No. 95-CV-10456 (RWS), 2007 WL 60513, at *5 (S.D.N.Y. Jan. 8, 2007). Accordingly, "courts must 'flush out' frivolous RICO complaints 'at an early stage of the litigation.'" *Gutterman*, 2020 WL 6728787, at *3 (quoting *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 496 (S.D.N.Y. 2007)).

Given the breadth and nature of Defendants' proposed RICO allegations, it is hard to imagine more prejudicial counterclaims than those sought to be added here. Indeed, "[a]llowing defendant to assert a RICO counterclaim at this time would not only dramatically change the nature of the litigation but would also result in significant additional expenses to plaintiffs." *Am. Soc'y for the Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus*, 244 F.R.D. 49, 51 (D.D.C.), *on reconsideration in part sub nom. Am. Soc. for Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus*, 246 F.R.D. 39 (D.D.C. 2007) ("*Ringling Brothers*"). Similar to the proposed

counterclaim in *Ringling Brothers*, Defendants' "proposed RICO claim involves all the plaintiffs [and] their counsel, . . . alleges a number of predicate criminal acts, and alleges an elaborate scheme." *Id.* Accordingly, the Court rejects Defendants' "argument that any additional discovery would not be unduly burdensome to plaintiffs." *Id.* (*See* Defs.' Mem. in Supp., ECF No. 125, at 13–14; Defs.' Reply in Supp., ECF No. 145, at 17–18.)

Furthermore, the significant expansion of the case proposed here would not entail "solely [] delay and litigation expense," which may be insufficient to warrant denial of leave to amend under the liberal standards of Rule 15. *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017). Just as in *Ringling Brothers*,

> The far-reaching nature of defendant's RICO claim would likely require substantial additional evidence — including, at a minimum, numerous additional documents and depositions . . . . As no discovery in this case . . . has been "pointed and efficient," there is no reason for the Court to find that discovery on the RICO claim would be anything but burdensome and lengthy. Moreover, such discovery would sidetrack this litigation away from the remaining, narrowed [affirmative] claim that is the central focus of this litigation. Plaintiffs would be required to devote substantial resources to defending against a RICO claim rather than bringing their [] claim to trial.
>
> . . . .
>
> Aside from the delay, given the inherent complexity of a RICO claim generally, and the RICO claim proposed in this case in particular, the Court finds that allowing defendant to amend its answers to assert a claim of such breadth would "unleash a Hydra that would require from the court nothing short of a herculean effort in time and attention to even maintain a semblance of control over it." *Koch v. Koch Industries, Inc.*, 127 F.R.D. 206, 212 (D. Kan. 1989). Through its numerous discovery-related motions, defendant has shown that its efforts to obtain information to impugn [one of the individual] plaintiff[s] and learn every detail of the media and litigation strategies of its opponents are relentless. The Court will not allow a proposed counterclaim to be used as a tool to indefinitely prolong this litigation . . . .

*Ringling Brothers*, 244 F.R.D. at 51–52. Like the unmanageable Hydra anticipated by the court in *Ringling Brothers*, the record to date here strongly indicates that permitting an extraordinary expansion of this case by adding Defendants' proposed RICO

counterclaims — with allegations spanning, essentially, the entirety of Plaintiffs' Michael Kors brand protection efforts from 2018 to the present — is highly likely to derail the slow and difficult progress that has been made in getting the parties through fact discovery. *(See* PTAA, ECF No. 123-2, ¶ 198 (claiming that the "acts began at least as early as January 2018 and remain ongoing").) Accordingly, the addition of these counterclaims would invariably "delay the final disposition of the action." *Fido's Fences Inc. v. Canine Fence Co.*, No. 08-CV-754 (LDW) (AKT), 2009 WL 10709094, at *5 (E.D.N.Y. Oct. 5, 2009) (finding that "extensive additional discovery, as well as the additional motion practice anticipated . . . will undoubtedly take a significant period of time to complete given the complexity of the issues," and observing that "'[o]ne of the most important considerations in determining whether amendment would be prejudicial is the degree to which it would delay the final disposition of the action'" (quoting *H.L. Hayden Co. of New York v. Siemens Med. Sys., Inc.*, 112 F.R.D. 417, 419 (S.D.N.Y. 1986))). The record of this case amply establishes that, should the counterclaims be amended to include a RICO of the breadth proposed by Defendants, the case would become even more unmanageable, and the counterclaims would be "used as a tool to indefinitely prolong this litigation." *Ringling Brothers*, 244 F.R.D. at 52. It would also likely delay the final disposition of the case for many months, if not years.

For these reasons, Defendants' motion to file a third amended answer should be denied in an exercise of discretion under Federal Rule of Civil Procedure 15(a), due to the high degree of undue prejudice it would cause Plaintiffs.[5]

---

[5] By contrast, any prejudice to Defendants is much more minimal because Defendants could commence a separate action against Plaintiffs. *See H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Systems, Inc.*, 112 F.R.D. 417, 423 (S.D.N.Y. 1986) (denying plaintiffs' motion to amend and noting that plaintiffs can commence a separate action, using facts established in the instant litigation).

### III. Defendants' RICO Claims Would be Futile

Leave to file Defendants' proposed RICO counterclaims should also be denied because they are futile.[6]

### A. Futility Standard

"Futility is a determination, as a matter of law, that proposed amendments would fail to . . . state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 224–25 (2d Cir. 2017) (quotation marks omitted); *Pottash v. Hello Living, LLC*, No. 19-CV-4530 (RPK) (SJB), 2021 WL 375341, at *3 (E.D.N.Y. Feb. 2, 2021). In considering a motion to dismiss under Rule 12(b)(6), "'[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001) (alteration in original) (quoting *Sheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

However, a pleading that "merely offers labels and conclusions, a formulaic recitation of the elements, or 'naked assertions devoid of further factual enhancement,'" will not survive a motion to dismiss. *Turner v. New York Rosbruch/Harnik*, 84 F. Supp. 3d

---

[6] The Court's analysis herein does not address many of Plaintiffs' and Defendants' arguments regarding the proposed RICO claims. Because the Court finds that the enterprise allegations are insufficient, there is no need at this juncture to reach other more complex questions in the case, some of which appear to involve disputed facts, such as (1) the nature of Attorney Lee's role in providing legal services (*compare* Pls.' Mem. in Opp'n, ECF No. 139, at 14–15 (citing cases to support argument that the "mere provision" of legal services fails to establish operation and management of a RICO enterprise), *with* Defs.' Reply in Supp., ECF No. 145, at 4 (characterizing Attorney Lee's role as shaking down competitors to extract payments), or (2) whether the proposed counterclaims should be precluded by the general rule that "allegations of frivolous, fraudulent, or baseless litigation activities — without more — cannot constitute a RICO predicate act." *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018) (observing that "compelling policy arguments" support this principle because if "litigation activity were adequate to state a claim under RICO, every unsuccessful lawsuit could spawn a retaliatory action, which would inundate the federal courts with procedurally complex RICO pleadings," and could chill access to the courts (internal quotation marks omitted)). (*Compare* Pls.' Mem. in Opp'n, ECF No. 139, at 18 & n.18, *with* Defs.' Reply in Supp., ECF No. 145, at 10.)

161, 166 (E.D.N.Y. 2015) (quoting *Iqbal*, 556 U.S. at 678). Although the Court must accept all factual allegations at the pleadings stage as true, the Court need not credit "legal conclusions" or "threadbare recitals of the elements of a cause of action, supported by mere conclusory assertions." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 1999) (alteration omitted). Similarly, the Court should not "accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. More is required.

## B. Pleading RICO

The RICO statute is a very powerful, but tricky, tool. Under RICO, it is unlawful "for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c); *see also United States v. Indelicato*, 865 F.2d 1370, 1373 (2d Cir. 1989) (en banc). In turn, 18 U.S.C. § 1962(d) makes it unlawful "for any person to conspire to violate any of the provisions" of the RICO statute. A "person," for RICO purposes, "includes any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). "'Enterprise' is defined to 'include[] any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.'" *Bankers Trust Co. v. Rhoades*, 741 F.2d 511, 515 (2d Cir. 1984) (alteration omitted) (quoting 18 U.S.C. § 1961(4)).

To establish a civil RICO claim, "a plaintiff must show: '(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962.'" *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001) (quoting *Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.*, 101 F.3d 900, 904 (2d Cir. 1996)). A RICO plaintiff has two pleading burdens. First, a plaintiff "must allege that the defendant has violated the substantive RICO statute, 18 U.S.C. § 1962,

commonly known as 'criminal RICO.'" *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983). To plead such a violation, the plaintiff must allege the following "seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Id*. (quoting 18 U.S.C. § 1962(a)–(c)). These seven elements must be adequately alleged "before turning to the second burden, *i.e.*, invoking RICO's civil remedies." *Id.* As to the second burden, a civil plaintiff must allege "that he was 'injured in his business or property by reason of a violation of section 1962.'" *Id.* (emphasis omitted) (quoting 18 U.S.C. § 1964(c)). In addition, the alleged RICO pattern must be pled with specificity and, in the case of fraud, particularity. *See Moore v. PaineWebber*, 189 F.3d 165, 173 (2d Cir. 1999). A defect in pleading any of the complex RICO elements may render a RICO claim futile. *Cf. Moss*, 719 F.2d at 17 (setting forth the elements required to allege a civil RICO claim).

### C. The RICO "Distinctness" Requirement

#### 1. *Applicable Law*

The requirements of the RICO "person" and "enterprise" elements are not formulaic or, in the case of corporate entities, necessarily intuitive. "[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). "A corporate entity can be sued as a RICO 'person' or named as a RICO 'enterprise,' *see* 18 U.S.C. § 1961(3), (4), but the same entity cannot be <u>both</u> the RICO person and the enterprise, *Anatian v. Coutts Bank (Switzerland) Ltd.*, 193 F.3d 85, 89 (2d Cir. 1999) (citing

*Bennett v. U.S. Tr. Co. of N.Y.*, 770 F.2d 308, 315 (2d Cir. 1985))." *U1it4less, Inc. v. Fedex Corp.*, 871 F.3d 199, 205 (2d Cir. 2017) (emphasis in original).

In cases where the alleged RICO defendants are corporate entities, this analysis is more complex than it may appear at first blush. As the Second Circuit has explained:

> "[T]he plain language and purpose of the statute contemplate that a <u>person</u> violates the statute by conducting an <u>enterprise</u> through a pattern of criminality," so "a corporate person cannot violate the statute by corrupting itself." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013). A corporation can act only through its employees, subsidiaries, or agents. So "if a corporate defendant can be liable for participating in an enterprise comprised only of its agents — even if those agents are separately incorporated legal entities — then RICO liability will attach to any act of corporate wrong-doing and the statute's distinctness requirement will be rendered meaningless." *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 492 (6th Cir. 2013) (citing *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994)).

*Id.* at 205–06 (citation omitted) (emphasis in original).

### 2. Analysis

Defendants' proposed counterclaims name Fossil and Michael Kors (referred to in the counterclaims as "MK") as Counterclaim Defendants, alleging that, "as early as January 2018, Fossil, MK, and Attorney Lee formed an enterprise ('the Enterprise') by associating together for the common purpose of preventing third parties from reselling genuine Michael Kors Products for their own financial gain." (PTAA, ECF No. 123-2, ¶ 189; *see also id.*, at ECF page 10, Counterclaims introductory paragraph (identifying Counterclaim Defendants as Fossil and Michael Kors).) The PTAA goes on to conclusorily allege that the "Enterprise required the active participation of each member" and that the members "agreed to and did conduct and participate in the conduct of the Enterprise's affairs through a pattern of racketeering activity." (*Id.* ¶¶ 190–91.) The PTAA then includes claims as to the "purposes" of the enterprise, and

how Michael Kors, Fossil, and Attorney Michael Lee allegedly participated in the conduct of the enterprise's affairs. (*Id.* ¶¶ 192–94.)

However, these summary assertions are not factual allegations from which it may be reasonably inferred that the two named corporate entities are sufficiently different to establish distinct RICO persons and a RICO enterprise. The Second Circuit has squarely held that "by virtue of the distinctness requirement, a corporate entity may not be both the RICO person and the RICO enterprise under section 1962(c)." *Riverwoods*, 30 F.3d at 344. This, of course, does not "foreclose the possibility of a corporate entity being held liable as a defendant under section 1962(c) where it associates with others to form an enterprise that is sufficiently distinct from itself." *Id.* But "a plaintiff may not circumvent the distinctness requirement 'by alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant.'" *U1it4less,* 871 F.3d at 205 (quoting *Riverwoods*, 30 F.3d at 344). Yet that is what we have here.

The allegations in Defendants' proposed counterclaims expressly acknowledge that Plaintiffs Fossil and Michael Kors, working together, "are in the business of licensing, manufacturing and distributing consumer products, including Michael Kors Products." (PTAA, ECF No. 123-2, ¶ 8.) Defendants further allege that Plaintiffs were acting with the common purpose of attempting to control "the distribution and pricing of their products, including the Michael Kors Products, through unlawful means," and that they "distribute Michael Kors Products through Amazon and were motivated to remove competition and maintain pricing for those products on this critical sales channel." (*Id.* ¶¶ 93, 95.) Throughout their proposed counterclaims, it is notable that Defendants often fail to even distinguish between Fossil and Michael Kors — frequently referring to them collectively as the "Counterclaim Defendants" or "Enterprise

Members." (*See, e.g., id.* ¶¶ 8, 27–32, 36–56, 65, 69, 75–91, 93–97, 191–92.) The end result, overall, is a failure to allege facts adequate to plausibly establish that Fossil and Michael Kors "operated outside of a unified corporate structure guided by a single corporate consciousness." *U1it4less*, 871 F.3d at 207; *see also Mohr-Lercara v. Oxford Health Ins., Inc.*, No. 18-CV-1427 (VB), 2019 WL 1409479, at *11 (S.D.N.Y. Mar. 28, 2019) (concluding that separately incorporated entities which were "corporate siblings" constituted a "unified corporate structure"); *Palatkevich v. Choupak*, Nos. 12-CV-1681 (CM) & 12-CV-1682 (CM), 2014 WL 1509236, at *15 (S.D.N.Y. Jan. 24, 2014) (observing that "where a *corporate entity* is named as the defendant 'person,' it is not distinct from any alleged 'enterprise' consisting of that corporate defendant together with related companies, employees, or agents") (emphasis in original).

The descriptions in the PTAA regarding the respective roles that Fossil and Michael Kors allegedly played in filing infringement reports to Amazon illustrate the deficiency of Defendants' pleadings in establishing that the corporate entities acted distinctly from the alleged RICO enterprise. Defendants specifically aver that Michael Kors "authorizes Fossil to use the Michael Kors Registration, as well as other marks" in connection with a scheme to remove the listings of third-party Amazon sellers who, Defendants contend, were reselling genuine Michael Kors Products. (PTAA, ECF No. 123-2, ¶¶ 97–98.) Defendants also assert that Fossil submits infringement reports to Amazon, as to which Michael Kors "was required to provide an authorization code to Fossil." (*Id.* ¶ 98.) According to Defendants, Michael Kors could "revoke Fossil's authorization to submit infringement reports to Amazon or other online marketplaces." (*Id.*) Defendants further allege that the confidential licensing agreement between Fossil and Michael Kors mandates what Fossil can and cannot do with regard to reporting and reacting to suspected counterfeiting. (PTAA (unredacted), ECF No. 124-3, ¶ 99; *see*

*generally* Pls.' Letter, ECF No. 194-1, at 2 (arguing that the allegations in the proposed counterclaims regarding the licensing arrangement makes clear that "Fossil only acted pursuant to a trademark licensor-licensee relationship").)[7] Of central importance here, Defendants' allegations acknowledge that Fossil distributes and sells watches on Michael Kors' behalf and is operating under a licensing agreement with Michael Kors. What these factual claims allege is a close business relationship between a licensor and licensee, through which the two corporations were coordinated and acted as agents for the other in various aspects of their business.

What these factual allegations do *not* establish is the existence of distinct RICO persons who associated "with others to form an enterprise that is sufficiently distinct from itself." *Riverwoods*, 30 F.3d at 344. Rather, this case is more similar to *Levesque v. Iberdola, S.A.*, No. 19-CV-389 (JDL), 2021 WL 3476092, at *18 (D. Me. Aug. 6, 2021). In *Levesque*, the court concluded that the alleged enterprise, which consisted of three related corporate entities and an individual, was insufficiently distinct from any "person," in part because the pleading "lumps the actions of all of the corporate defendants together, and seems designed to show that [the parent corporation] used [the other corporate entities] as extensions of itself to implement" the scheme alleged. *Id.* So is the case here.

Defendants attempt to salvage their proposed pleading by arguing that the distinctness requirement is met because Fossil and Michael Kors are separate legal entities. (Defs.' Letter, ECF No. 192, at 2–3.) This is not enough. *See U1it4less*, 871 F.3d at 206 (rejecting proposition that persons and enterprise were distinct "solely by virtue of

---

[7] In connection with the pending motion to amend, the Court directed the parties to submit briefing on the distinctness requirement, which had not been addressed in the original briefing. (*See* July 8, 2022 ECF Order; Pls.' Letter, ECF No. 194-1; Defs.' Letter, ECF No. 192.)

[defendants'] separate legal incorporation"). As one court has observed: "'Second Circuit law . . . holds that a corporation acting in concert and in the ordinary course of business with its agents and employees is not a RICO enterprise, whether or not the agents are external or internal to the corporation,' even where that business is alleged to be fraudulent." *Lynn v. McCormick*, No. 17-CV-1183 (CS), 2017 WL 6507112, at *6 (S.D.N.Y. Dec. 18, 2017) (quoting *In re: Gen. Motors LLC Ignition Switch Litig.*, Nos. 14-MD-2543 & 14-MC-2543, 2016 WL 3920353, at *13 (S.D.N.Y. July 15, 2016)), *aff'd*, 760 F. App'x 51 (2d Cir. 2019) (summary order); *see also Mayfield v. General Elec. Capital Corp.*, No. 97-CV-2786 (DAB), 1999 WL 182586, at *8 (S.D.N.Y. Mar. 31, 1999) ("Where, as here, the activities alleged are carried out by a corporation and its corporate agents or employees pursuant to its regular activities, the distinctness requirement is not met simply because the agent is a separate corporation rather than an individual person.").

Defendants argue that this case is analogous to the enterprise alleged in *Securiton Magnalock Corp. v. Schnabolk*, 65 F.3d 256 (2d Cir. 1995). (*See* Defs.' Letter, ECF No. 192, at 3.) In *Securiton*, there were three named RICO defendants, or "persons": Charles Schnabolk, and two corporate entities, Kalon and Andra. *Securiton Magnalock Corp.*, 65 F.3d at 257–58. In concluding that the named RICO persons were sufficiently distinct from the enterprise, the court found that "Kalon and Andra were two separate and distinct corporations," and that they were in "distinct lines of business." *Id.* at 263. The court further found that even though defendant Schnabolk "was an officer or agent of each corporation, each was an independent entity that could benefit from his nefarious activities." *Id.* In addition, Schnabolk himself was clearly named as a "RICO person as well as a member of a RICO enterprise." *Id.* Based on the specific allegations in that case, which involved a coordinated effort to create defamatory rumors concerning the plaintiff's business, the court concluded that both of the corporate entities named in the

RICO enterprise benefitted from the illegal activities of their agents, and that the three of them, collectively, formed a RICO enterprise distinct from the named RICO defendants. *Id.* at 263–64.

Defendants' reliance on *Securiton* is misplaced. First, as discussed above, the two corporate entities in that case were not only distinct legal entities, but they were also engaged in distinct lines of work. Second, they were controlled by a common actor, who was himself a named RICO defendant (and thus a RICO person), who used his corporate entities to create an enterprise that was distinct from either corporation and distinct from himself. One of the cases on which Defendants rely describes the inquiry as follows: "[T]he core question is whether the RICO enterprise is distinct from each of the RICO persons, in which case it satisfies the distinctness requirement, or if the RICO enterprise is deemed associated with itself, which is not permissible." *Bd. of Managers of Trump Tower at City Ctr. Condo v. Palazzolo*, 346 F. Supp. 3d 432, 454 (S.D.N.Y. 2018) (citations omitted). (*See* Defs.' Letter, ECF No. 192, at 3.) Importantly, even if corporations named in a RICO claim are engaged in business that is "alleged to be fraudulent," *Lynn*, 2017 WL 6507112, at *6, jointly engaging in crime does not necessarily transmogrify corporate relationships into a RICO enterprise that is distinct from the corporations themselves. (*See* Defs.' Letter, ECF No. 192, at 2 (listing the alleged roles of the enterprise participants and characterizing the corporations' roles vis-à-vis each other as working together, giving authority, and authorizing).) For the reasons discussed above, and as illustrated by Defendants in their recent filing, the allegations in this case demonstrate that Fossil and Michael Kors were working together for coordinated purposes and as agents of one another. Defendants have, accordingly, failed to plausibly plead one or more distinct RICO persons and a RICO enterprise as required under Section 1962(c). *Riverwoods*, 30 F.3d at 344; *see also Discon, Inc. v. NYNEX*

*Corp.*, 93 F.3d 1055, 1063–64 (2d Cir. 1996), *vacated on antitrust grounds*, 525 U.S. 128 (1998).

Defendants next argue that "Lee is also distinct RICO person." (Defs.' Letter, ECF No. 192, at 3.) But Defendants also acknowledge, as they must, that Lee is not named in the proposed RICO claims as a counterclaim defendant. (Defs.' Letter, ECF No. 192, at 1.) Persons can commit RICO violations, enterprises cannot. *See Cruz*, 720 F.3d at 120. Accordingly, irrespective of the obvious fact that Lee is a separate person, because he is not a proposed counterclaim defendant and is thus not a "person" alleged to have engaged in a pattern of racketeering activity, the fact that he was included as a participant in the enterprise is not relevant to the inquiry of whether the proposed RICO counterclaims properly allege RICO persons distinct from the alleged enterprise. Here, the only two Counterclaim Defendants, Fossil and Michael Kors, are corporate entities who, according to the counterclaims themselves, acted in a closely coordinated manner, and, as corporate entities must, through their agents, including Attorney Lee. *See Mayfield*, 1999 WL 182586, at *8. They are not distinct.

For all of these reasons, Defendants' proposed RICO allegations fail to plead the existence of both a distinct "person" and an "enterprise" as required by the RICO statute.[8]

---

[8] Finding that the proposed RICO claims fail to plausibly state this required element, the Court does not reach whether Defendants' mail fraud allegations are adequately pled under Rule 9(b). But the Court harbors doubts as to whether the PTAA provides sufficient "particularity as to each defendant" and their fraudulent intent. *J.T. v. de Blasio*, 500 F. Supp. 3d 137, 170 (S.D.N.Y. 2020); *see also Mayfield*, 1999 WL 182586, at *9 (discussing the need to plead facts sufficient to give rise to a strong inference of fraudulent intent as to each defendant). Similarly, the Court is deeply skeptical regarding the sufficiency of Defendants' allegations concerning the RICO pattern. (*See* PTAA, ECF No. 123-2, ¶ 196 ("Pursuant to and in furtherance of their illegal scheme, Fossil, MK, and Lee committed multiple related acts of extortion (18 U.S.C. § 1951) and wire fraud (18 U.S.C. § 1343)"); *see also id.* ¶ 199 ("The acts set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961.").) These two

### D. The RICO Enterprise "Structure" Requirement

In addition to the distinctness requirement, as to association-in-fact enterprises, the Supreme Court has observed that:

> "[A]n enterprise includes any union or group of individuals associated in fact" and that RICO reaches "a group of persons associated together for a common purpose of engaging in a course of conduct." [*United States v.*] *Turkette*, 452 U.S. [576,] 580, 583 [(1981)]. Such an enterprise, we said, "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." [*Turkette*, 452 U.S.] at 583.

*Boyle v. United States*, 556 U.S. 938, 944–45 (2009). Under *Boyle*, to establish an enterprise, there must be a discernible structure. *Id.* at 945; *see also id.* at 946 ("[A]n association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."). It is also well established that "'to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs,' § 1962(c), one must participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young,* 507 U.S. 170, 185 (1993) (quoting 18 U.S.C. § 1962(c)).

Even assuming *arguendo* that Defendants' allegations are sufficient to establish a distinct enterprise and one or more RICO persons, Defendants' proposed RICO claims fail to articulate any cognizable structure to the enterprise. Here, although Defendants' proposed counterclaims invoke the language of RICO structure, other than a couple of fleeting assertions — such as the conclusory allegations that Fossil led the enterprise and developed the plan for its purposes (PTAA, ECF No. 123-2, ¶ 194; *see also* Defs.'

---

sentences do not identify which acts Defendants rely upon to establish the RICO pattern allegedly committed by each proposed RICO defendant, leaving the Court to surmise which of the allegations in the preceding 190-plus paragraphs might state the wire fraud predicates and which might state the extortion predicates, and which Counterclaim Defendant is alleged to have done which predicate acts.

Letter, ECF No. 192, at 2) — there are insufficient factual assertions from which to infer the structure of the enterprise or an explanation of how the proposed RICO defendants participated in the "operation or management of the enterprise itself." *Reves,* 507 U.S. at 185. Defendants' allegations here regarding operation and management amount to nothing more than legal conclusions couched as factual allegations, which the Court need not accept. *Iqbal*, 556 U.S. at 678.

It is true that "[i]n the Second Circuit, 'the operation or management test typically has proven to be a relatively low hurdle for plaintiffs to clear, especially at the pleading stage.'" *Bd. of Managers of Trump Tower*, 346 F. Supp. 3d at 461 (quoting *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 176 (2d Cir. 2004) (internal quotation marks omitted) (referred to herein as ("*First Capital*")). "The question for the Court is simply whether 'the RICO defendant . . . played *some* part in directing the enterprise's affairs.'" *Id.* (quoting *First Capital,* 385 F.3d at 176) (alteration and internal quotation marks omitted in *Bd. of Managers*).

In this case, the assertions regarding operation and management as to the two named RICO Counterclaim Defendants (Plaintiffs Michael Kors and Fossil) are remarkably similar, and, ultimately, insufficiently factual to nudge Defendants' enterprise allegations over the line from conceivable to "plausible on its face." *Iqbal*, 556 U.S. at 678. (*See* PTAA, ECF No. 123-2, ¶¶ 193–94.) With the exception of the conclusory assertions that Fossil was responsible for "leading" the enterprise and "developing the plan to achieve the purposes of the Enterprise" (*id.* ¶ 194), none of the allegations explain how the proposed RICO Counterclaim Defendants managed the enterprise itself, vis-à-vis one another. Rather, the allegations focus on the alleged enterprise members' purported roles in participating in the conduct that, Defendants contend,

constituted the underlying RICO predicate acts.[9] (*See id.* at ¶¶ 191–94; *see also* Defs.'

Letter, ECF No. 192, at 2.)[10] Accordingly, Defendants fail to clear even the "low hurdle"

of the Second Circuit's "operation or management" test, *First Capital,* 385 F.3d at 176,

and would not survive a motion to dismiss.

### E.  Defendants' RICO Conspiracy Counterclaim Also Fails

Defendants' failure to properly allege a RICO enterprise necessarily renders their

conspiracy claim under 18 U.S.C. § 1962(d) futile as well. To plead a RICO conspiracy,

"a plaintiff must allege the existence of an agreement to violate RICO's substantive

provisions." *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 124 (2d Cir. 2018) (quotation

marks omitted). Here, the alleged conspiracy was an agreement to commit the

substantive RICO violation that is insufficiently pled. (PTAA, ECF No. 123-2, ¶¶ 207–12

---

[9] Michael Kors is alleged to have:

> conducted and participated in the conduct of the Enterprise by: filing baseless
> counterfeiting claims in federal court; concealing evidence from third parties that would
> confirm the baselessness of the counterfeiting allegations made against them; and
> directing Attorney Lee to make false representations to this Court that AS sold
> counterfeit goods. Upon information and belief, MK also conducted and participated in
> the conduct of the Enterprise by: helping develop the plan to achieve the purpose of the
> Enterprise; and accepting payments from third parties, either directly or indirectly
> through Attorney Lee or Fossil, which payments were made in response to baseless
> counterfeiting allegations.

(PTAA, ECF No. 123-2, ¶ 193.) The "conducted and participated" allegations are remarkably
similar against Fossil, with the added conclusory claims, discussed *supra*, that Fossil led the
enterprise and developed the plan to achieve the purposes of the Enterprise. (PTAA, ECF No.
123-2, ¶ 194.) The Court notes that the allegation that Michael Kors participated by "helping
develop the plan to achieve the purposes of the Enterprise" underscores the Court's conclusion
that Defendants have not alleged sufficient facts from which to infer that Michael Kors and
Fossil are RICO persons distinct from the enterprise. This candid allegation of "helping"
strongly suggests that Michael Kors and Fossil were acting with a unified corporate
consciousness. *See U1it4less,* 871 F.3d at 207.

[10] In the Defendants' recent letter in support of the motion to amend, they assert that
additional information has come to light regarding the monies allegedly earned through the
purported RICO scheme, and also cite to expert reports. (*See* Defs.' Letter, ECF No. 192, at 2.)
For purposes of the motion to amend, the Court does not consider these factual arguments,
instead focusing on whether the proposed amended pleading is sufficient on its face.

(incorporating substantive RICO allegations into Defendants' proposed RICO conspiracy counterclaim).) Defendants cannot allege an agreement to violate RICO's substantive provisions when no such violation has been adequately pled.

## CONCLUSION

For the foregoing reasons, the Court respectfully recommends that Defendants' motion to file a third amended answer (ECF No. 123) be denied.

\* \* \* \* \* \*

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a), (e) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g.*, *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

**SO ORDERED.**

Dated: Brooklyn, New York
July 21, 2022

_____
*Taryn A. Merkl*
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE