UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
FOSSIL GROUP, INC. et al.,

                Plaintiffs,

        -against-

ANGEL SELLER LLC et al.,

                Defendants.
-------------------------------------------------------X

**MEMORANDUM AND ORDER**
20-CV-2441 (HG) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

       Fossil Group, Inc. and Michael Kors, LLC ("Plaintiffs") bring this action against Angel Seller LLC and others ("Defendants") claiming that Defendants are selling counterfeit watches that infringe upon Michael Kors' trademarks through Defendant Angel Seller's Amazon.com store front. (Amended Complaint ("Am. Compl."), ECF No. 16, ¶¶ 1–2, 22–24.) In support of these claims, the Amended Complaint details Plaintiffs' purchase of several watches they assert are counterfeit from Defendant Angel Seller between August 2019 and September 2020, including a purchase made following commencement of this lawsuit. (*Id.* ¶¶ 27–42.) Defendants dispute these accusations, claiming that the products it sells on its website are legitimate. (Amended Answer ("Am. Answer"), ECF No. 21, ¶¶ 22–24, Counterclaims ¶ 29.) Currently pending before the Court is Defendants' motion to seal portions of the September 23, 2021 Hearing Transcript and Plaintiffs' letter identifying portions of the September 23, 2021 Hearing Transcript they seek to have sealed. (*See* Sept. 23, 2021 Hr'g Tr., ECF No. 110; Defs.' Mot. to Seal, ECF No. 116; Pls.' Proposed Redactions, ECF No. 117.)

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

On September 23, 2021, the Court held a motion hearing regarding various of the parties' discovery motions. (*See* Sept. 23, 2021 ECF Minute Entry and Order.) On October 13, 2021, Defendants filed a motion to seal portions of the September 23, 2021 Hearing Transcript. (*See* Sept. 23, 2021 Hr'g Tr., ECF No. 110; Defs.' Mot. to Seal, ECF No. 116.) Defendants request to seal the following lines from the September 23, 2021 Hearing Transcript because the lines in question contain information relating to Defendants' suppliers: 5:19; 6:19–20; 19:11–13; 19:15–17; 19:20; 20:4; 20:18; 22:3–5; 22:7–10; 22:12–13; 68:21–69:3; 69:9–10; 70:1–2; 70:7–14; 71:25–72:2. (Defs.' Mot. to Seal, ECF No. 116, at 1.) Defendants also request that the following portions of the September 23, 2021 Hearing Transcript be sealed because the lines in question identify the quantity of watches they purportedly have in inventory: 7:23; 8:1; 8:3; 11:3; 24:7; 24:10. (*Id.* at 1–2; *see also* Defs.' Additional Authority, ECF No. 141, at 1.)

Also on October 13, 2021, Plaintiffs filed a letter identifying portions of the September 23, 2021 Hearing Transcript they seek to have sealed. (Pls.' Proposed Redactions, ECF No. 117.) Specifically, Plaintiffs request sealing of the following portions of the September 23, 2021 Hearing Transcript: 14:23–15:1; 16:22–17:3; 17:13; 17:20–21; 22:23–23:4; 23:9–11. (*Id.* at 1.) Plaintiffs argue that the "identified information pertains to the Plaintiffs' trade secrets and highly confidential business information related to Plaintiffs' brand protection program, the factors Plaintiffs use when determining whether a product is counterfeit, and the specific factors applicable to Defendants at-issue watches." (*Id.*) In addition, despite concerns that Defendants'

---

[1] This Order assumes familiarity with the background of the case, the underlying facts, and the relevant procedural history, and includes only the limited procedural history relevant to the instant motion.

requests were overly broad, Plaintiffs indicated that they did not object to Defendants'
proposed sealing requests. (*Id.* at 1–2.)

Following the parties' initial submissions, the Court entered an order directing
the parties to file any additional authority in support of their sealing requests by
November 17, 2021, and to include "a specific explanation as to how the disclosure of
each proposed reaction outweighs the presumption of public access." (Nov. 10, 2021
ECF Order.)[2] In response, both parties filed letters providing additional authority in
support of their requests to seal. (Pls.' Additional Authority, ECF No. 138; Defs.'
Additional Authority, ECF No. 141.) Notably, Plaintiffs withdrew their request to seal
page 23 lines 9 through 11, and clarified that they seek to seal page 17, lines 13 through
17, not only page 17, line 13. (Pls.' Additional Authority, ECF No. 138, at 1, 1 n.1.) For
the reasons stated below, Defendants' Motion to Seal (ECF No. 116) is granted in part
and denied in part. Plaintiffs' request to seal portions of the transcript (ECF No. 117) is
also granted in part and denied in part.

## DISCUSSION

### I.  Legal Standards

The right of public access to judicial documents and the public's interest in
monitoring the administration of justice are both well established. *See Lugosch v.*

---

[2] In the Court's order directing additional briefing, the Court observed that: "Although
the parties' proposed redactions are largely consistent with the positions taken by the parties
with respect to designating certain information in this case Confidential and Highly
Confidential, the parties' determinations do not provide a sufficient basis to seal excerpts of
transcripts of court proceedings." (Nov. 10, 2021 ECF Order.) The Court noted that the parties
had not "analyzed their redaction requests granularly against the presumption of availability
that attends to judicial documents and the factors that must be weighed in determining whether
to seal them." (*Id.* (citing *King Pharms., Inc. v. Eon Labs, Inc.*, No. 04-CV-5540 (DGT) (RLM), 2010
WL 3924689, at *6 (E.D.N.Y. Sept. 28, 2010)).) The Court further noted that the parties' requests
for sealing were broad and sought sealing of information that "may not actually comprise
sensitive information, much less information that is so sensitive that the risk of disclosure
outweighs the presumption of public access to Court proceedings." (*Id.*)

*Pyramid Co. of Onondaga*, 435 F.3d 110, 119–20 (2d Cir. 2006); *United States v. Aref*, 533 F.3d 72, 83 (2d Cir. 2008); *King Pharms., Inc. v. Eon Labs, Inc.*, No. 04-CV-5540 (DGT) (RLM), 2010 WL 3924689, at *4 (E.D.N.Y. Sept. 28, 2010) (collecting cases).

> The right of public access gives rise to a rebuttable presumption of public availability, the weight of which presumption "must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts."

*King Pharms, Inc.*, 2010 WL 3924689, at *4 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) ("*Amodeo II*")); *see also Lugosch*, 435 F.3d at 120 ("[D]ocuments may be sealed if 'specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" (quoting *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987) (quotation marks omitted))); *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*").

When reviewing a motion to seal, courts consider three factors: (1) whether the document is a "judicial document"; (2) "the weight of the presumption of access to that document"; and (3) whether "all of the factors that legitimately counsel against disclosure of the judicial document" outweigh "the weight properly accorded the presumption of access." *Mirlis v. Greer*, 952 F.3d 51, 59 (2d Cir. 2020) (quotation marks and citations omitted). Here, the first factor is "easily resolved" because all the sealing requests pertain to the September 23, 2021 Hearing Transcript, which is a judicial document. *Id.; see also O'Connor-Roche v. RBC Cap. Markets, LLC*, No. 22-CV-1467 (LLS), 2022 WL 769329, at *1 (S.D.N.Y. Mar. 14, 2022) (finding a hearing transcript to plainly be a judicial document); *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016) (finding that a "judicial document" is "relevant to the performance of the judicial function and useful in the judicial process" and that such documents are presumptively public (quotation marks omitted)).

As to the second factor, the Second Circuit recognized in *Amodeo* that the weight to be given to the presumption of access to judicial documents would fall along a continuum, observing that the weight to be given to the presumption of access "must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Amodeo II*, 71 F.3d at 1049. "Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Id.* Here, the Court affords significant weight to the presumptive right of access because the judicial document at issue is a transcript of oral argument pertaining to discovery motions, and the information and arguments at the hearing were relevant to the Court's adjudication on the motions. *See Mirlis*, 952 F.3d at 60 ("The general and deeply rooted rule is that the presumptive right of access is afforded 'strong weight' when applied to documents that play a central role in 'determining litigants' substantive rights — conduct at the heart of Article III.'" (quoting *Amodeo II*, 71 F.3d at 1049). "The presumption of access is thus fundamental and not casually overcome." *Id.* at 61.

In analyzing the third factor, it is well established that considerations of a "business's proprietary information, such as trade secrets or confidential research" can override the public right of access to judicial documents. *Crossman v. Astrue*, 714 F. Supp. 2d 284, 287 (D. Conn. 2009). However, the Second Circuit has cautioned that "[i]n most cases, a judge must carefully and skeptically review sealing requests to insure that there really is an extraordinary circumstance or compelling need." *Video Software Dealers Assoc. v. Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1993). With regard to trade secrets specifically, "the 'party seeking to preclude disclosure of trade secrets has the burden to show that the information in fact constitutes a trade secret, that disclosure would harm

5

[the] movant's competitive position and that the asserted harm outweighs the presumption of public access.'" *King Pharms., Inc.*, 2010 WL 3924689, at *6 (quoting *Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.*, 26 F. Supp. 2d 606, 613 (S.D.N.Y. 1998)); *see also Cuno Inc. v. Pall Corp.*, 117 F.R.D. 506, 508 (E.D.N.Y. 1987) (noting that the party seeking protection for alleged trade secrets bears the burden of demonstrating good cause for such a classification).

For the reasons set forth below, the parties' requests are granted in part and denied in part.

## II. Analysis

### A. Defendants' Requests for Sealing

Defendants request sealing of the following excerpts, for the reasons indicated:

| Transcript Page and Line Number | Proffered Reason for Sealing |
|---|---|
| 5:19 | Reveals the number of Defendants' suppliers |
| 6:19–20 | Reveals the names of Defendants' suppliers |
| 19:11–13; 19:15–17; 19:20; 20:4; 20:18; 22:3–5; 22:7–10; 22:12–13; 68:21–69:3; 69:9–10; 70:1–2; 70:7–14; 71:25–72:2 | Discusses purported supplier of Defendants |
| 7:23; 8:1; 8:3; 11:3; 24:7; 24:10 | Purports to identify quantity of watches in inventory |

(Defs.' Additional Authority, ECF No. 141, at 1.)

### 1. Sealing Requests to Protect Supplier Information

Defendants' proffered justification for the first three groups of requests is that they pertain to supplier information. Defendants argue that the lines in question reveal "the number of Defendants' suppliers," "the names of Defendants' suppliers," and discuss a "purported supplier of Defendants." (*Id.*) The Court notes at the outset that the weight of the presumption of access to this specific information is relatively low because the number, names, and details of Defendants' suppliers have not played a

significant role in the Court's performance of its Article III duties. *See Amodeo II*, 71 F.3d at 1050 (finding that the weight of the presumption of access is low when the information does not play a role in a court's Article III duties).

Accordingly, the question the Court must answer is whether "the factors that legitimately counsel against disclosure of the judicial document" outweigh the relatively low presumption of access to details regarding Defendants' suppliers.[3] *Mirlis*, 952 F.3d at 59. In support of their argument that the Court should so conclude, Defendants argue that disclosure "'might harm [their] competitive standing'" if publicly disclosed. (Defs.' Additional Authority, ECF No. 141, at 2–3 (quoting *IBM*, 2020 WL 6048773, at \*2).) A careful and skeptical review of Defendants' requests, however, reveals that some of their proposed sealing requests do not, in fact, reveal information from which any competitor could gain an advantage. For example, their proffered basis for the first request is that it reveals the number of suppliers they had. They have offered no specific, granular argument or authority for the proposition that a mere number of suppliers is a business or trade secret, or that its disclosure could harm their competitive standing. Accordingly, the request to seal line 5:19 is denied. In contrast, the next proposed excerpt for sealing (at lines 6:19–20) does, in fact, reveal the specific names of suppliers identified by Defendants during a deposition. Because that excerpt

---

[3] The Court notes that it has previously allowed information regarding Defendants' suppliers' identities and other details to remain confidential during discovery. (*See* Oct. 9, 2021 Order, ECF No. 112, at 4 (allowing only specific employees at Fossil and Michael Kors to receive the identities of Defendants' suppliers and directing those specific employees to sign a Protective Order to not disclose the information to the public).) Additionally, as Defendants note, "Defendants have consistently designated their supplier information as 'Highly Confidential' in this action." (Defs.' Additional Authority, ECF No. 141, at 2; *see also* Defs.' Resp. in Opp'n, ECF No. 67, at 2–3; E. Sternberg Decl., ECF No. 67-1, ¶¶ 5, 7.) It is well settled, however, that a party's confidentiality designation is not binding on the Court.

is much more specific and could reveal sensitive business information, the Court concludes that the names of the suppliers identified at lines 6:19–20 may be sealed.

The sealing requests in the next group, starting with lines 19:11–13, all pertain to another business from which Defendants may have obtained watches, but the Court finds that Defendants' requests are significantly overbroad. Although the Court concludes that the actual name of the supplier may be sealed for the same reasons as discussed above, the Court concludes that Defendants have not established a sufficient basis to seal the majority of the excerpts, in the context of the information's relevance to the Court's adjudicatory duties. For example, the proposed excerpts on page 19, lines 15 to 17, and line 20, and page 20, lines 4 and 18, include details regarding argument to the Court in support of Defendant's publicly-filed motion to quash a subpoena. (*See* Mot. to Quash Subpoena, ECF No. 81.) In light of that motion, and the fact that the information discussed at the hearing was relevant to the Court's determination on the motion, the Court finds that Defendants have not established a sufficient basis to seal all of these excerpts. In addition, these lines do not reveal any trade secrets or proprietary information. (*See* Sept. 23, 2021 Order, ECF 90; Sept. 23, 2021 ECF Minute Entry and Order.) Therefore, as noted in the table at the end of this Memorandum and Order, a portion of line 19:11 shall be sealed but Defendants have not offered sufficient justification to seal the other lines on page 19 and page 20.

For the same reasons, the sealing requests as to page 22 are denied, with the exception of the name of the business as it appears on lines 3 and 7. Likewise, the Court's observations in support of its ruling and the question to Plaintiff's counsel posed at 68:21–69:3 also shall not be sealed as they do not reveal any business information and because they are relevant to the Court's ruling on the motion. Nor shall the argument by Plaintiff's counsel at page 69, lines 9 to 10, be sealed since it reveals

nothing about Defendants or any party; it is argument about a discovery deficiency. Accordingly, except as otherwise noted, and as detailed in the chart at the conclusion of this Memorandum and Order, Defendants' requests to seal these lines are denied.

Defendants' next proposed request for sealing, on page 70, lines 1 through 2, lines 7 through 14, and page 71, line 25 through page 72, line 2, are granted in part and denied in part. The name of the supplier identified on page 70, line 2, may be sealed, limited to the first two words of that line. Likewise, on page 71, line 25, following "see where it goes" through page 72, line 2, up until "he sold them . . . ." may also be sealed because, in context, it discusses the identity of one of Defendants' purported suppliers. The remainder of this sealing request is without a proper basis. Not only is Defendants' proffered basis for sealing inapposite, the language Defendants seek to strike here is argument regarding the publicly-filed motion to quash. (*See* Mot. to Quash Subpoena, ECF No. 81.) Accordingly, the weight to be afforded to the presumption of access as to this information outweighs any legitimate bases to seal these lines.

2. <u>Sealing Requests Pertaining to Defendants' Quantity of Watches</u>

Defendants request sealing as to the following excerpts of the September 23, 2021 Hearing Transcript because the lines in question "[p]uport[] to identify [the] quantity of watches in inventory": 7:23; 8:1; 8:3; 11:3; 24:7; 24:10. (Defs.' Additional Authority, ECF No. 141, at 1.) As to the second factor, Defendants argue that "the purported quantity of watches in Defendants' inventory is irrelevant to any of the issues discussed at [the] Hearing," and point out that "'[w]here testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption [of access] is low and amounts to little more than a prediction of public access absent a countervailing reason.'" (*Id.* at 2 (quoting *Amodeo II*, 71 F.3d at 1050).) Although the Court finds that the information regarding the quantity of watches in Defendants'

inventory has not been highly relevant to the Court's adjudicatory duties, Defendants also have not provided any legitimate justification for why the information, which was offered to the Court during oral argument, should be under seal.

Unlike the identities of Defendants' suppliers, which the Court is ordering sealed, and which the Court has allowed to remain confidential in previous orders so as to not to inadvertently harm Defendants' competitive standing, Defendants have offered no articulated basis as to why the *number* of watches purportedly in inventory should be sealed, notwithstanding this Court's specific directive that they provide a granular analysis in support of each sealing request. (*See* Nov. 10, 2021 ECF Order; Defs.' Additional Authority, ECF No. 141; *see also, e.g.*, Oct. 9, 2021 Order, ECF No. 112, at 4 (allowing only specific employees at Fossil and Michael Kors to receive the identities of Defendants' suppliers and directing those specific employees to sign a Protective Order to not disclose the information to the public).) Therefore, while the quantity of watches in Defendants' inventory may have a low presumption of access, as to the third factor, the Court finds that there is no articulable reason to prevent disclosure of the information. Accordingly, the information is afforded the presumption of access. Defendants' request for sealing of lines 7:23; 8:1; 8:3; 11:3; 24:7; and 24:10 of the transcript is denied.

### B.  Plaintiffs' Sealing Requests

Plaintiffs have requested sealing of portions of the September 23, 2021 Hearing Transcript because the lines in question "contain details on Plaintiffs' anticounterfeiting program and efforts, including counterfeiting assessments and Plaintiffs' means of assessing whether or not a product is counterfeit," and "describe a highly confidential brand protection anti-counterfeiting document." (Pls.' Additional Authority, ECF No. 138, at 2, 3.) Specifically, Plaintiffs request that the following lines be sealed:

| Transcript Page and Line Number | Proffered Reason for Sealing |
|---|---|
| 16:22–17:3; 22:23–23:4 | Contain details regarding Plaintiffs' anti-counterfeiting program and efforts |
| 14:23–15:1; 17:13–17; 17:20–21 | Describe a highly confidential brand protection anti-counterfeiting document |

(*Id.*)

As an initial matter, the Court notes that as to the second factor, the weight of the presumption of access to some of the information Plaintiffs seek to seal is fairly low because the specifics of Plaintiffs' anti-counterfeiting program have not played a role in the Court's performance of its Article III duties. *See Amodeo II*, 71 F.3d at 1050. Accordingly, as to the third factor, for some of Plaintiffs' requests, "the factors that legitimately counsel against disclosure of the judicial document" do outweigh the low presumption of access to the details of Plaintiffs' anti-counterfeiting program. *Mirlis*, 952 F.3d at 59.

The Court has previously had occasion to consider the public right of access to information regarding Plaintiffs' anti-counterfeiting program and concluded that there are good reasons to allow certain, specific details of it to remain confidential from the public. (*See* Oct. 8, 2021 Hr'g Tr., ECF No. 126, at 16:10–14; *id.* at 24:20–25; Nov. 10, 2021 Order, ECF No. 136, at 4, 6–7.) Generally speaking, this is because some of the details of Plaintiffs' anti-counterfeiting program include business information that "'might harm [their] competitive standing'" and reveal trade secrets if publicly disclosed. *IBM*, 2020 WL 6048773, at *2 (quotation marks omitted) (quoting *In re Parmalat Secs. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009)); *see also Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 511 (S.D.N.Y. 2015) (granting sealing requests "limited to specific business information and strategies" because the requests "'may provide

valuable insights into a company's current business practices that a competitor would seek to exploit'" (quoting *Encycl. Brown Prods., Ltd.*, 26 F. Supp. 2d at 614)).

As the Court has previously observed, certain of the information relevant to Plaintiffs' anti-counterfeiting efforts "could be a useful roadmap for a would-be counterfeiter." (Oct. 8, 2021 Hr'g Tr., ECF No. 126, at 24:24–25.) *See also IBM*, 2020 WL 6048773, at *2. This is true, for example, of the information in lines 22:23–23:4, which provides granular detail regarding a particular watch and the bases for determining whether it is counterfeit. (*See* Pls.' Additional Authority, ECF No. 138, at 2–3.) Similarly, the Court finds Plaintiffs have provided a sufficient justification to seal a portion of lines 14:23–15:1, and one line of lines 17:13–17 — both portions of the transcript include Defendants' description of what Plaintiffs fairly characterize as "a highly confidential brand protection anti-counterfeiting document." (*Id.* at 2.) As to 14:23–15:1 and 17:13–17, however, the Court only orders that the description of what the document contains be sealed, as detailed in the chart below. The Court does not order that Defendants' argument regarding the document be sealed. Not only are many of Defendants' characterizations clearly argument (not facts that could reveal any business information about Plaintiffs), but the allegations Defendants lodge in their argument are already public.[4] Accordingly, as to the request to seal 14:23–15:1 and 17:13–17, the Court finds

---

[4] Specifically, in these portions of the transcript, Defendants allege that Plaintiffs initiate anti-counterfeiting efforts based on no evidence, or against parties who are not selling counterfeit watches. (*See* Sept. 23, 2021 Hr'g Tr., ECF No. 110, at 14:24–15:1, 17:13–17 (describing Plaintiffs' so-called "pattern and practice" of accusing people of counterfeiting on the basis of no evidence).) The Court observes, however, that these arguments by Defendants have been made publicly, and that Plaintiffs have not provided a particularized justification to seal these portions of the transcript. (*See, e.g.*, Defs.' Mem. in Supp. of Mot. to Amend, ECF No. 123-1, at 2, 6 (arguing that Plaintiffs have submitted "counterfeit" reports to many online marketplaces "based on the same admittedly false allegations of counterfeiting alleged against [Defendant Angel Seller]" and have made "false allegations of counterfeiting against online resellers, as part of their coordinated effort to eliminate competition and extract monetary payment from hapless third parties for financial gain").)

that Plaintiffs have met their burden to justify sealing, but only as to specific, limited portions of the transcript.

The Court concludes, however, that the remainder of Plaintiffs' requests, in context, go too far. Specifically, the generic description of a document provided by defense counsel at lines 16:22 to 17:3 of the transcript reveals nothing more than the unremarkable proposition that Plaintiffs compare possible counterfeit watches to their own diagrams and watches to identify possible fakes, and that spacing and wording may be relevant to those determinations. (Pls.' Additional Authority, ECF No. 138, at 3.) The request to seal lines 17:20 through 17:21 is mystifying as it reveals nothing more than that a portion of a document provided to Defendants was redacted. (*See* Sept. 23, 2021 Hr'g Tr., ECF No. 110, at 17:20–21.) Accordingly, the Court finds Plaintiffs' proffered bases for sealing is insufficient as to these requests.

*   *   *   *   *

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Seal (ECF No. 116) is granted in part and denied in part. Plaintiffs' requests for sealing (ECF No. 117) are also granted in part and denied in part. The following portions of the transcript are hereby placed under seal:

| Transcript Page Number and Lines | Language to be Sealed |
|---|---|
| Page 6, lines 19 through 20 | The first portion of the sentence after "watches came from" on line 19, up until the words "were each identified" on line 20. |
| Page 14, line 23 through 24 | Page 14 line 23, in its entirety, through page 14, line 24, up until "which reveal." |
| Page 17, line 13 | The entirety of line 13. |
| Page 19, line 11 | The words following "were obtained" to the end of the sentence, up until: "Is that not accurate" |
| Page 22, lines 3 & 7 | Line 3, the first three words up until "was named to Amazon." Line 7, the three words after "information," up until "advertises . . . ." |
| Page 22, line 23 through Page 23, line 4 | Page 22, line 23, the two words following the sentence that ends "finer point on it," through page 23, line 4, up until the words "So things don't add up." |
| Page 70, line 2 | The first two words, up until "as being a supplier . . . ." |
| Page 71, line 25 through Page 72, line 2 | Page 71, line 25, following "see where it goes" through page 72, line 2, up until "he sold them . . . ." |

**SO ORDERED.**

Dated: Brooklyn, New York
      August 12, 2022

_Taryn A. Merkl_
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE