UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FOSSIL GROUP, INC. and MICHAEL
KORS, LLC,

                    Plaintiffs,

            v.

ANGEL SELLER LLC; ERIC STERNBERG,
and JOHN DOES 1-5,

                    Defendants.

**MEMORANDUM & ORDER**
20-CV-02441 (HG) (TAM)

**HECTOR GONZALEZ**, United States District Judge:

Plaintiffs Fossil Group, Inc. ("Fossil") and Michael Kors, LLC ("MK") (collectively,

"Plaintiffs") bring this action against Defendants Angel Seller LLC ("AS") and Eric Sternberg

alleging:  (i) trademark counterfeiting, in violation of 15 U.S.C. § 1114(1)(b); (ii) trademark

infringement, in violation of 18 U.S.C. § 1114(1)(a); (iii) trademark dilution, in violation of 15

U.S.C. § 1125(c); (iv) unfair competition, false designation of origin, and false description, in

violation of 15 U.S.C. § 1125(a); and (v) unfair and deceptive business practices, in violation of

New York General Business Law § 349 ("NYGBL").  ECF No. 16 ¶¶ 51–87 (Amend. Compl.).

Defendant AS has asserted a counterclaim for defamation.  ECF No. 115 ¶¶ 69–84 (Defs.'

Second Amend. Answer).

Presently before the Court are the parties' motions for summary judgment.  ECF No. 391

(Defs.' Mot.); ECF No 392 (Pls.' Mot.).  The parties have cross-moved for summary judgment

on Plaintiffs' affirmative claims and on AS's counterclaim.  ECF No. 391-1 at 7; ECF No. 392-1

at 9.[1]  For the reasons set forth below, Plaintiffs' motion is granted in part and denied in part and Defendants' motion is granted in part and denied in part.

## **BACKGROUND**[2]

The parties dispute many facts in this case.  Unless otherwise indicated, the following facts are undisputed.  Michael Kors designs, markets, and/or distributes a variety of merchandise globally.  ECF No. 392-24 ¶ 3 (Defs.' Resp. to Pls. 56.1 Statement).  Fossil is a global design, marketing, and distribution company that makes, among other things, watches under in-house owned and licensed brands.  *Id.* ¶ 6.  MK is the registrant of various trademarks, which it licenses to Fossil in connection with the manufacture and distribution of watches sold under the trademarks ("MK Watches").  ECF No. 391-23 ¶ 1 (Pls.' Resp. to Defs. 56.1 Statement.); ECF No. 392-24 ¶ 2.  Since 2004, MK has exclusively licensed to Fossil the right to sell, distribute, and promote MK Watches.  ECF No. 392-24 ¶ 28.  Pursuant to the 2015 MK-Fossil License

---

[1]     The Court cites to pages assigned by the Electronic Case Files System ("ECF").

[2]     The Court overrules all 11 evidentiary objections filed by Defendants in conjunction with their motion for summary judgment.  *See* ECF No. 392-48 (Pls. Resp. to Evid. Objects.). Defendants' objections are duplicative and border on frivolity.  With respect to the objections concerning declarations filed by undisclosed corporate representative witnesses, such as Louisa Christofidou and Lai Kwok Hung, Defendants have not shown how they have been harmed by their disclosure as witnesses at this stage.  *See Nixon v. TWC Admin. LLC*, No. 16-cv-6456, 2019 WL 1428348, at *1–2 (S.D.N.Y. Mar. 29, 2019) (Nathan, J.) (Defendant's belated disclosure of a new corporate representative was harmless in part because the witness's declaration "primarily serve[d] to authenticate documents no party contest[ed] were properly produced in discovery . . . .").  Additionally, the Court has already ruled that the expert testimony of several of the declarants, such as Lai Kwok Hung and Pascale Huber, is admissible.  *See* ECF No. 375 (Daubert Order).  To the extent any of the declarations identified by Defendants "identify disputed facts . . . the Court's application of the summary judgment standard . . . requires no consideration of those facts."  *Nixon*, 2019 WL 14283848 at *2.  With respect to the remaining objections, such as the various hearsay objections, Defendants failed to consider many of the "exceptions to hearsay and the actual definition of hearsay in Rule 801," and therefore those objections are overruled.  *Emanuel v. Gap, Inc.*, No. 19-cv-03617, 2022 WL 3084317, at *3 (S.D.N.Y. Aug. 3, 2022).

Agreement, Fossil is required to: (1) "do whatever is reasonable and necessary for the protection of the [MK] Trademarks and IP Rights"; (2) invest on an annual basis in "prevent[ing] infringement of the [MK] Trademarks and counterfeiting of the [MK] Licensed Products" including by having a "dedicated staff member focused on anti-counterfeiting efforts for the [MK] brand"; and (3) "take such other action to prevent infringement and counterfeiting" of MK products. ECF No. 392-16 ¶ 6 (Barnes Decl.).

MK has registered the following marks and used them on the packaging of MK Watches: "MICHAEL KORS," "MICHAEL MICHAEL KORS," "MK MICHAEL KORS," "MICHAEL KORS ACCESS," and "JETMASTER," (together the "MK Marks"). ECF No. 391-38 ¶ 5 (MK Decl.); *see also* ECF No. 392-24 ¶ 10. The earliest trademark registration for MK Watches was on October 17, 2006. ECF No. 391-38 ¶ 5. Since then, MK has spent substantial time, money, and effort in building up the goodwill and consumer recognition of MK-branded watches. ECF No. 391-38 ¶¶ 7–25; *see also* ECF No. 392-24 ¶¶ 15–16, 19. In terms of finances, during the 2012–2016 fiscal years, MK spent approximately $346.5 million on advertising and marketing for the MK brand globally. ECF No. 391-38 ¶ 15. During the 2017–2021 fiscal years, the parent company of MK spent around $781.1 million on advertising and marketing MK and two other brands. *Id*. And, in the 2012–2021 fiscal years, MK's total global net revenue for MK products was more than $36 billion. *Id.* ¶ 21. With respect to consumer recognition, MK Watches have appeared in well-known magazines such as "Elle, Vanity Fair, GQ, InStyle, Vogue, LA Times, Men's Health Glamour, and Modern Luxury." *Id.* ¶ 16. The MK brand founder, Michael Kors, was a judge on a U.S. television show called "Project Runway" for the first ten seasons. *Id.* ¶¶ 15, 19–20. Celebrities and dignitaries have been photographed wearing MK products, including United States Former First Lady Michelle Obama, who posed in a MK dress for her

official portrait.  ECF No. 391-38 ¶ 18.  On social media, the MK Facebook and Instagram accounts each have over 18 million followers, and the MK Twitter account has over three million followers.  *Id.* ¶ 16.

Defendant AS is a New York limited liability company that sells products through its Amazon.com ("Amazon") storefront "Angel Seller."  ECF No. 391-16 ¶¶ 3–5 (Sternberg Decl.).  AS has also owned e-commerce stores called "Angel Seller" or "AngelSeller" on Newegg.com.[3]  ECF No. 392-24 ¶ 48.  AS has sold goods bearing the "MICHAEL KORS" mark.  *Id.* ¶ 48.  Sage Camera Inc. was a predecessor to AS and is now dissolved.  ECF No. 391-16 ¶ 6.  Sage Camera NY, LLC ("Sage LLC") is an active New York company.  ECF No. 391-45 ¶ 51 (Defs. Resp. to Pls. Supp. 56.1 Statement).  Defendant Eric Sternberg is the owner of AS and the Chief Executive Officer of Sage LLC.  *Id.* ¶ 52; ECF No. 392-24 ¶ 46.

Fossil employee Amber Barnes worked as a Brand Protection Specialist from March 2018 to March 2022.  ECF No. 392-16 ¶ 3.  Ms. Barnes's current title at Fossil is Senior Brand Protection Specialist.  *Id.* ¶ 2.  In these roles, Ms. Barnes has investigated companies that distributed merchandise bearing suspected counterfeits and infringements of Fossil's and its licensors' trademarks.  *Id.* ¶ 3.

In May and June 2018, Ms. Barnes was in contact with a third-party brand enforcement company called Gray Falkon.  ECF No. 391-8 at 2 (Jun. 18, 2018, Email).  The company informed Ms. Barnes that it had "a new and very effective process for combatting online resellers by engaging them through Amazon's ecosystem and threatening them with loss of their selling

---

[3]    Newegg Commerce, Inc. ("Newegg") is a global online retailer founded in 2001 that also assists "businesses' e-commerce needs with marketing, supply chain, and technical solutions in a single platform."  Newegg, About Newegg, https://perma.cc/AWU9-TWTY (last visited Mar. 20, 2025).

privileges because of violations of Amazon policies." *Id.* at 7. The company conducted an initial analysis and determined that the value of MK Watch offerings on Amazon by third-party resellers was over $650,000. *Id.* at 2. One of the mechanisms that the company suggested Ms. Barnes use to protect the Fossil brand from illegitimate sellers was to "[s]ubmit policy violations to Amazon and [to engage in] relentless follow up until action [is] taken." *Id.* at 10.

Between September 2019 and March 2020, Ms. Barnes instructed Fossil's investigator to purchase seven MK Watches from AS's Amazon storefront. ECF No. 391-23 ¶¶ 8–9; *see also* ECF No. 392-24 ¶ 48. The watches consisted of the following seven model numbers: MK3192, MK5076, MK5128, MK5263, MK5353, MK5354, and MK5859 ("the Accused Watches"). ECF No. 391-23 ¶ 8. Fossil's investigator purchased all seven models from AS's Amazon storefront. *Id.* ¶ 9.

After examining the seven Accused Watches, Ms. Barnes concluded that six of the watches—MK3192, MK5076, MK5128, MK5263, MK5353, and MK5354—were counterfeit, and one—MK5859—was "suspicious." ECF No. 392-16 ¶ 10.[4] Based on Ms. Barnes's personal assessments, she submitted to Amazon a "Report a Violation" ("RAV") web-submission form for five of the Accused Watches—MK3192A, MK5128, MK5263, MK5353, and MK5354. *Id.*

---

[4]     After this lawsuit was filed, Ms. Barnes instructed Fossil's investigator to purchase an MK3192 model watch from Newegg. ECF No. 392-16 ¶ 11. Ms. Barnes also concluded that that Accused Watch was counterfeit. *Id.* This brings the total number of Accused Watches to eight.

¶ 13.[5]  In those forms, Ms. Barnes indicated that the watches were counterfeit.  *Id.*[6]  Defendants allege that these statements to Amazon were untrue, and therefore were defamatory.  ECF No. 392-24 ¶ 115.  Defendants maintain that the Accused Watches are authentic MK Watches.  ECF No. 391-23 ¶ 15 (Pls. Resp. to Defs. Supp. 56.1 Statement).

On September 12, 2019, AS contacted Fossil Group Brand Protection, requesting that Fossil withdraw a counterfeit claim on Amazon regarding one of the MK Watches listed for sale by AS's Amazon storefront.  ECF No. 391-18 at 6 (Brand Protection Email).  Fossil Group Brand Protection responded the next day, explaining that it was "unable to send a retraction to Amazon as the watch was confirmed to be a counterfeit."  *Id.*  On January 22, 2020, Plaintiffs' outside counsel sent a cease and desist letter to AS at sales@angelsellerinc.com, demanding that AS stop selling counterfeit MK Watches, identify its suppliers, provide an accounting of sales, and forfeit its remaining inventory.  ECF No. 392-24 ¶ 76; ECF No. 391-18 at 4–5 (Jan. 22, 2020, Letter).  In response, counsel, on behalf of AS claimed that AS, "[did] not require Fossil or MK's 'authorization' to resell genuine merchandise," and that the allegations about selling counterfeit goods were "meritless."  ECF No. 391-18 at 2–3 (Jan. 30, 2020, Letter).  On March 25, 2020, counsel for Angel Seller contacted Amazon's Legal Department, indicating that "Fossil Group has provided no support for their reports that Angel Seller has infringed on Fossil

---

[5]     Ms. Barnes testified that she attempted to report the Accused MK5076 Watch to Amazon on or about March 23, 2020, but experienced technical issues on the Amazon Brand Registry website and was not able to do so.  ECF No. 392-16 ¶ 14.  Although Ms. Barnes did not submit a form for the Accused MK5859 Watch, Ms. Barnes thereafter found more indicia of counterfeiting for that watch.  *Id.* ¶ 15.

[6]     Amazon's RAV form requires the submitter to affirm that they have a good faith belief their rights were violated and declare under penalty of perjury that the information submitted is correct.  ECF No. 392-24 ¶ 123.

Group's trademark rights."  ECF No. 392-10 at 5 (Mar. 25, 2020, Letter).  On April 11, 2020, Amazon informed AS that AS's account was being suspended due to counterfeit reports.  ECF No. 392-13 (Notice from Seller Performance Team).  Plaintiffs contend, and Defendants refute, that AS's suspension was not solely due to Plaintiffs' complaints to Amazon, but rather due to the accumulation of complaints received by Amazon about AS's Amazon storefront account from Plaintiffs *and* other brands.  ECF No. 392-24 ¶ 68.

On or about April 13, 2020, AS, through Sage LLC's employee AJ Goodman, began working with vendor Effyaz, Inc., to prepare a "Plan of Action" ("POA")[7] to reinstate AS's account on Amazon.  ECF No. 382-16 ("A1MXFBSEZT410T" Chat History); ECF No. 391-45 ¶¶ 53–54.  On May 17, 2020, AS informed Amazon that it was "no longer selling any items by the brand Fossil/Michael Kors."  ECF No. 392-11 (May 17, 2020, Email).  Amazon reinstated AS's Amazon storefront on May 18, 2020.  ECF No. 392-24 ¶ 150.

AS alleges that the shutdown of its Amazon storefront caused "an immediate loss of five weeks of sales, or over ███████."  ECF No. 391-23 ¶ 216.  AS further alleges it sustained additional losses such as "inventory degradation," "missed opportunities due to a disruption of cash flow," "loss of 'buy box' on numerous listings," and loss of its ability to sell the remaining inventory of MK Watches, "which would have retailed for about $150,000."  *Id.* ¶¶ 217–20.

---

[7]    Amazon's "Seller Central" website informs sellers that if an account has been "suspended because of notices of IP infringement against your products or content, [sellers] can provide [Amazon] with a viable [POA] . . . .  We will evaluate your [POA] and determine if your account may be reinstated."  Amazon Seller Central, Intellectual Property Policy for Sellers, https://perma.cc/R4KV-K36X (last visited Mar. 20, 2025).

# LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, a court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).[8] The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When parties cross-move for summary judgment "each movant has the burden of presenting evidence to support its motion that would allow the district court, if appropriate, to direct a verdict in its favor." *Barhold v. Rodriguez*, 863 F.2d 233, 236 (2d Cir. 1988). Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).

"The role of the [C]ourt is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Jin Dong Wang v. LW Rest, Inc.*, 81 F. Supp. 3d 241, 252 (E.D.N.Y. 2015). In deciding a summary judgment motion, any ambiguities and justifiable inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. *LaFond v. Gen. Physics Servs. Corp.*, 50 F.3d 165, 171 (2d Cir. 1995). Although "courts must refrain from assessing competing evidence in the summary

---

[8]    Unless otherwise indicated, when quoting cases, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.

judgment record and avoid making credibility judgments," a party must defeat summary judgment by putting forth "evidence on which the jury could *reasonably* find for the non-moving party." *Saeli v. Chautauqua Cnty.*, 36 F.4th 445, 456 (2d Cir. 2022) (emphasis in original). "In reviewing the evidence and the inferences that may reasonably be drawn, [the Court] may not make credibility determinations or weigh the evidence. . . .  Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Proctor v. LeClaire*, 846 F.3d 597, 607–08 (2d Cir. 2017).

## DISCUSSION

**I.**   **Trademark Infringement, Trademark Counterfeiting, and Unfair Competition, False Designation of Origin and False Description ("Infringement-Related Claims")**

With respect to Plaintiffs' trademark infringement claim, Section 32(1)(a) of the Lanham Act imposes civil liability on any person who, without the consent of the registrant,

> use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . .

15 U.S.C. § 1114(1)(a).  With respect to Plaintiffs' trademark counterfeiting claim, Section 32(1)(b) of the Lanham Act imposes civil liability on any person who, without authorization,

> reproduce[s], counterfeit[s], cop[ies], or colorably imitate[s] a registered mark and appl[ies] such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles, or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . .

15 U.S.C. § 1114(1)(b).  And, finally, with respect to Plaintiffs' unfair competition and false designation of origin claim, Section 43(a)(1) of the Lanham Act prohibits the use in commerce of "any word, term, name, symbol, device, or combination thereof," which is "likely to cause confusion . . . as to the origin, sponsorship, or approval" of goods or services.  15 U.S.C.

§ 1125(a)(1).  All three of these Infringement-Related Claims are analyzed under the same framework.  *See Mattel, Inc. v. AnimeFun Store*, No. 18-cv-8824, 2021 WL 765766, at *6 (S.D.N.Y. Feb. 26, 2021) ("Because Mattel is entitled to summary judgment on its trademark counterfeiting and infringement claims, Mattel also is entitled to summary judgment on its claims for false designation of origin, passing off, and unfair competition under 15 U.S.C. § 1125(a)."); *Streamlight, Inc. v. Gindi*, No. 18-cv-987, 2019 WL 6733022, at *6 (E.D.N.Y. Oct. 1, 2019) ("Courts in the Second Circuit have determined that the standards for false designation of origin claims . . . [and] an unfair competition claim . . . [are] identical to that of a trademark infringement claim pursuant to Section 32 of the Lanham Act.").

"[A] plaintiff alleging trademark infringement must demonstrate that (1) it has a valid mark that is entitled to protection and that (2) the defendant's actions are likely to cause confusion with that mark." *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 84 (2d Cir. 2020).  "A plaintiff does not have to show necessarily that consumers would believe that the defendant's goods or services are from the same source as those of the plaintiff." *Id.*  "Rather, a defendant may also be liable for trademark infringement if its actions are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of the defendant's goods or services with those of the plaintiff." *Id.*  "In a Lanham Act action, summary judgment based on a likelihood of confusion is appropriate where the undisputed evidence would lead only to one conclusion." *Mattel*, 2021 WL 765766, at *5.

MK's United States Patent and Trademark Office trademark registrations are *prima facie* evidence of the first prong of the trademark infringement analysis, the validity of the mark. *Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 368 (S.D.N.Y. 2020) ("[A] plaintiff may provide a certificate of registration with the U.S. Patent and Trademark Office for the mark as *prima facie*

evidence of its validity."), *adhered to in part on reconsideration,* No. 18-cv-1774, 2020 WL 5350541 (S.D.N.Y. Sept. 4, 2020).  Although Defendants contend that Plaintiffs have not "identified the trademark registrations asserted against each of the Accused [Watches]," ECF No. 391-1 at 17, Defendants do not dispute that MK has registered the following marks and used them on the packaging of MK Watches:  "MICHAEL KORS," "MICHAEL MICHAEL KORS," "MK MICHAEL KORS," "MICHAEL KORS ACCESS," and "JETMASTER."  ECF No. 392-24 ¶ 10; ECF No. 391-38 ¶ 5.  Defendants also do not dispute that AS has sold goods bearing the "MICHAEL KORS" mark.  ECF No. 392-24 ¶ 48.  Accordingly, the Court finds that the first prong of the infringement analysis has been satisfied.  *See Tiffany*, 971 F.3d at 84 n.4 ("The Lanham Act treats trademark registration as 'conclusive evidence of the validity of the registered mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce,' 15 U.S.C. § 1115, and Costco does not contest that Tiffany has registered 'Tiffany' as a mark in connection with the sale of jewelry.").

The principal question then is whether the products sold by Defendants are likely to cause confusion.  "In considering the likelihood of confusion, courts in this Circuit generally look to the factors set forth in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961)."  *Mattel*, 2021 WL 765766, at *6.  However, the Court need not undertake that factor-by-factor analysis under *Polaroid* in this case "because counterfeits, by their very nature, cause confusion."  *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003); *accord Mattel*, 2021 WL 765766, at *6; *Chloe*, 2009 WL 1227927, at *6.  "Indeed, confusing the customer is the whole purpose of creating counterfeit goods."  *Gucci Am.*, 286 F. Supp. 2d at 287.  Instead, the Court needs to only determine the "more fundamental question of whether there are items to be confused in the first place—that is, whether the items at issue here

11

are, in fact, counterfeit and whether Defendants sold those items." *Id*. On this point, the parties could not be further apart. Plaintiffs argue that "Defendants offered for sale and sold *at least three counterfeit* MK Watches." ECF No. 392-1 at 21 (emphasis in original). Specifically:

> (1) the Accused MK5354 Watch is counterfeit including because it bears an inaccurate Outside Case Back Code; and (2) the Accused MK5128 and MK5076 Watches are counterfeit including because their hangtags contain errors that do not conform to Fossil's consistent and well-established specifications for the content and appearance of hangtags.

*Id.* To substantiate these arguments, Plaintiff have put forward experts Pascale Huber, *see* ECF No. 392-20 ¶ 6 (Huber Decl.), who is a Technical Support Manager and Authenticity Expert for Fossil Group Europe GmbH, *id*. ¶ 2, and Lai Kwok Hung, *see* ECF No. 321-21 ¶ 5 (Lai Decl.), who is a Senior Director of Manufacturing Excellence at Fossil (East) Ltd, *id.* ¶ 2. On the other hand, Defendants contend that each of "the Accused Watches are authentic MK Watches; the components, functionality, and finish of each of the Accused Watches [are] consistent with an authentic MK Watch." ECF No. 391-1 at 19. Defendants have retained Laif Anderson, *see* ECF No. 391-3 ¶ 2 (Anderson Decl.), as an expert in watch authentication who based his opinions on his more than 20 years of experience working in the field of watch repair, *see* ECF No. 391-3 ¶ 4.[9]

Fundamentally, the contradicting evidence and expert testimony in connection with this motion reflects more of a "battle of the experts, which is typically inappropriate to decide at summary judgment." *Parker v. United Indus. Corp.*, No. 17-cv-5353, 2020 WL 5817012, at *3 (S.D.N.Y. Sept. 29, 2020). In presenting contradicting evidence on whether the Accused Watches are counterfeit, the parties are asking the court to make "[a]ssessments of credibility

---

[9]    The Court reiterates its concerns about the methodology used by Mr. Anderson, as explained in the Court's *Daubert* decision, namely that Mr. Anderson did not physically examine the watches. *See* ECF No. 375 at 4 n.3.

and choices between conflicting versions of the events" which are "matters for the jury, not for the court on summary judgment." *Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. 2015). Accordingly, the Court finds that conflicting expert opinions on whether the Accused Watches are counterfeit "demonstrate the existence of genuine issues of material fact, making summary judgment inappropriate." *Rouse v. Vanier*, No. 19-cv-06862, 2021 WL 5544935, at *5 (W.D.N.Y. Nov. 27, 2021). Therefore, both motions for summary judgment on the Infringement-Related Claims are denied. These causes of action shall proceed to trial.[10]

## II.   Federal Trademark Dilution

Pursuant to 15 U.S.C. § 1125(c), "the owner of a famous mark that is distinctive" is entitled to an injunction against a party whose commercial use of that mark "is likely to cause dilution by blurring or dilution by tarnishment . . . ." A defendant may be liable for trademark dilution if the plaintiff can show:

> (1) its mark is famous; (2) the defendant is making commercial use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and services.

*Savin Corp. v. Savin Grp.*, 391 F.3d 439, 449 (2d Cir. 2004). "One of the key distinctions between trademark infringement and trademark dilution is that the anti-dilution statutes provide more expansive protection than trademark infringement claims . . . . [T]his means that trademark dilution can be found even when the defendant's goods are in a wholly different area of

---

[10]     For these same reasons, contrary to Plaintiffs' contentions, *see* ECF No. 392-1 at 25–26, Defendants' affirmative defense arising under the First Sale Doctrine also survives. "[T]he 'First Sale Doctrine' carves out an exception for the resale of genuine goods bearing a true mark even though the sale is not authorized by the mark owner." *Coty Inc. v. Cosmopolitan Cosms. Inc.*, 432 F. Supp. 3d 345, 349 (S.D.N.Y. 2020); *accord Energizer Brands, LLC v. My Battery Supplier, LLC*, 529 F. Supp. 3d 57, 62 (E.D.N.Y. 2021). Although Plaintiffs argue that they did not consent to Defendants' sales of the MK Watches, *see* ECF No. 392-1 at 25, it remains to be decided by the jury whether the MK Watches Defendants sold were genuine or counterfeit. Accordingly, this affirmative defense survives summary judgment.

commerce than plaintiff's goods, and thus do not cause any likelihood of confusion." *Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 463, 522 n.44 (S.D.N.Y. 2008), *aff'd in part, rev'd in part*, 600 F.3d 93 (2d Cir. 2010); *accord Nike, Inc. v. B&H Customs Servs., Inc.*, 565 F. Supp. 3d 498, 513 (S.D.N.Y. 2021).

There are two types of dilution: blurring and tarnishment. *Nike*, 565 F. Supp. 3d at 513. Plaintiffs allege that Defendants engaged in dilution by tarnishment, *see* ECF No. 16 ¶ 79, which is defined as an "association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." 15 U.S.C. § 1125. Tarnishment "generally arises when the plaintiff's trademark is linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context likely to evoke unflattering thoughts about the owner's product." *Tiffany (NJ)*, 600 F.3d at 111.

### A.    The MK Marks Are Famous

Defendants argue that they are entitled to summary judgment on Plaintiffs' dilution claim because Plaintiffs have not satisfied the first prong of the trademark dilution analysis. Specifically, Defendants contend that "Plaintiffs have not produced evidence that any asserted MK Trademark is famous." ECF No. 391-1 at 24. Plaintiffs, on the other hand, argue that the MK Marks "are without question famous," "based on the decades of nationwide popularity, advertising, and financial success, making them a household name." ECF No. 392-1 at 23.

"[A] mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). In determining whether a mark "possesses the requisite degree of recognition," courts may consider:

> (i) The duration, extent, and geographic reach of advertising and publicity of the mark . . . [;] (ii) The amount, volume, and geographic extent of sales of goods or

services offered under the mark[;] (iii) The extent of actual recognition of the mark[; and] (iv) Whether the mark was registered . . . .

15 U.S.C. § 1125(c)(2)(A).  Courts have "generally limited famous marks to those that receive multi-million dollar advertising budgets, generate hundreds of millions of dollars in sales annually, and are almost universally recognized by the general public."  *DigitAlb, Sh.a v. Setplex, LLC*, 284 F. Supp. 3d 547, 557 (S.D.N.Y. 2018).

In weighing the relevant factors, the Court easily finds that the MK Marks are famous. Plaintiffs have put forth extensive evidence to support this.  Financially, during the relevant timeframe, MK spent hundreds of millions of dollars on marketing and advertising the MK brand globally.  ECF No. 391-38 ¶ 15.  MK's global net revenue for MK products for the fiscal years 2012–2021 totaled over $36 billion.  *Id.* ¶ 21.  In terms of consumer recognition, well-known celebrities and dignitaries have been pictured in MK products, and MK Watches have appeared in popular magazines.  *Id.* ¶¶ 16, 18.  Additionally, MK has millions of followers on its Facebook, Instagram, and Twitter social media accounts, and MK's founder appeared on a popular television series for the first ten seasons.  *Id.* ¶¶ 15–16, 19–20.  Plaintiffs further point to a case from the Northern District of Illinois, which found the MK Trademarks to be famous in the preliminary injunction context.  *See Michael Kors, L.L.C. v. Wang*, No. 15-cv-124, 2015 WL 12683830, at *1 (N.D. Ill. Feb. 18, 2015).

Although Defendants dispute the materiality of these facts, they have not "come forward with specific evidence demonstrating the existence of a genuine dispute" regarding these facts. *Eli Lilly*, 654 F.3d at 358.  Defendants therefore present nothing more than "metaphysical doubt[s]" as to these facts.  *Id.*  Accordingly, the Court finds, based on the extensive undisputed evidence concerning MK's advertising and marketing budget, sales, and publicity, that the MK marks are famous within the meaning of the trademark dilution analysis.  *See Gucci Am., Inc. v.*

*Guess?, Inc.*, 868 F. Supp. 2d 207, 218 (S.D.N.Y. 2012) ("Based on its extensive nationwide sales and publicity, its recognition as an identifier of Gucci, and the fact that it was first registered more than thirty years ago, I find that the GRG Stripe is a famous mark within the meaning of the Trademark Dilution Revision Act ('TDRA') of 2006."); *Malletier v. Dooney & Bourke, Inc.*, 561 F. Supp. 2d 368, 391 (S.D.N.Y. 2008) (finding Louis Vuitton's Monogram Multicolore Mark attained the requisite level of fame based on the "widespread advertising, publicity, promotion and sales of products bearing the Monogram Multicolore mark").

        B.     *Commercial Use of the Mark After it Became Famous*

Of the four factors in the trademark dilution analysis, fame was the only factor Defendants challenged on summary judgment, *see* ECF No. 391-1 at 24–25, and the only factor they opposed in opposition to Plaintiffs' motion for summary judgment, *see* ECF No. 392-23 at 19–21. On this basis alone, the Court could find that Defendants abandoned any argument against the second and third factors[11] and therefore concede that they are satisfied. *See Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims . . . that are not defended have been abandoned."); *accord St. Francis Holdings, LLC v. MMP Cap., Inc.*, No. 20-cv-4636, 2022 WL 991980, at *16 (E.D.N.Y. Mar. 31, 2022) (collecting cases). Nevertheless, for the sake of completeness, the Court finds the second and third factors of the trademark dilution analysis have also been satisfied. It is undisputed that Defendants used MK marks in commerce. ECF No. 392-24 ¶ 48. And, based on the Court's finding that the marks are famous, the undisputed evidence also shows that Defendants' use of the MK marks began after

---

[11]    For the reasons set forth in the next sub-section, *see* infra § II.C, the Court finds Defendants did not abandon the fourth element of the trademark dilution analysis.

they became famous. *See, e.g.*, ECF No. 391-18 at 4–5. These factors in the trademark dilution analysis are therefore satisfied.

### C.    Whether Defendant's Use of the Mark Dilutes its Quality

That brings us to the final factor, which is whether Defendants' use of the MK Mark dilutes the quality of the MK Mark. "Likelihood of dilution is established when defendants have distributed a counterfeit product of inferior quality to the genuine product." *Johnson & Johnson v. Azam Int'l Trading*, No. 07-cv-4302, 2013 WL 4048295, at *10 (E.D.N.Y. Aug. 9, 2013). Although Defendants did not affirmatively move on this factor in their motion, *see* ECF No. 391-1 at 24–25, the Court finds Defendants have sufficiently contested this factor by arguing that the Accused Watches are not counterfeit, *see id.* at 19–23. Accordingly, for the same reasons that the Court found there were issues of fact regarding the Infringement-Related Claims, *see* supra § I, the Court finds there are issues of fact preventing the Court from determining whether Defendants' use of the MK Mark dilutes its quality. As discussed above, the central issue in this case is whether Defendants sold products that were counterfeit, and based on the genuine issues of facts presented by the parties, the Court cannot determine whether Defendants' use of the MK Mark dilutes its quality. *See Johnson & Johnson & Lifescan, Inc. v. S. Pointe Wholesale, Inc.*, No. 08-cv-1297, 2014 WL 12558573, at *27 (E.D.N.Y. Apr. 4, 2014) (recommending denial of dilution claim because the court also denied summary judgment on infringement), *report and recommendation adopted*, Order (Feb. 27, 2018). Accordingly, the dilution claim shall proceed to trial for the jury to decide whether Defendants' products were counterfeit, and therefore diluted the quality of the MK Mark.

### III.    Unfair and Deceptive Business Practices under NYGBL § 349

Defendants argue that Plaintiffs have failed to produce evidence to substantiate their unfair and deceptive business practices claim under NYGBL § 349.  *See* ECF No. 391-1 at 25. To state a claim under NYGBL § 349, Plaintiffs must prove:  (1) that the challenged act or practice was consumer-oriented; (2) that it was misleading in a material way; and (3) that Plaintiffs suffered injury as a result of the deceptive act.  *See Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014).  To satisfy the first prong of the analysis, Plaintiffs must show that the challenged act or practice "had a broader impact on consumers at large."  *Id.* The statute's threshold for liability is higher than under federal law and requires "specific and substantial injury to the public interest over and above the ordinary trademark infringement." *Chanel, Inc. v. WGACA, LLC*, No. 18-cv-2253, 2022 WL 902931, at \*19 (S.D.N.Y. Mar. 28, 2022).  For that reason, "[t]he majority view in this Circuit is that trademark infringement claims are not cognizable under [NYGBL § 349] unless there is a specific and substantial injury to the public interest over and above ordinary trademark infringement."  *Juul Labs, Inc. v. EZ Deli Grocery Corp I*, No. 21-cv-2615, 2022 WL 1085406, at \*7 (E.D.N.Y. Feb. 10, 2022*), report and recommendation adopted,* 2022 WL 819152 (E.D.N.Y. Mar. 18, 2022).

Plaintiffs argue that it is sufficient for them to meet this threshold by demonstrating that the Accused Watches are counterfeit.  *See* ECF No. 391-22 at 27–28.  But most of the cases cited by Plaintiffs in support of that argument do not evaluate whether the claims in those cases alleged a "specific and substantial injury to the public interest over and above ordinary trademark infringement."  *See id.* (citing *Ideavillage Prod. Corp. v. OhMyGod 1*, 2020 WL 6747033, at \*2 (S.D.N.Y. Nov. 17, 2020), *Ontel Prods. Corp. v. Auto Mall*, 2017 WL 11569558, at \*3 (S.D.N.Y. Nov. 20, 2017), and *Burberry Ltd. & Burberry USA v. Designers Imps., Inc.*, No. 07-

cv-3997, 2010 WL 199906, at *8 (S.D.N.Y. Jan. 19, 2010)).  The only opinion cited by Plaintiffs that conducts this analysis, *Juul Labs,* is clearly distinguishable from the case at hand.  2022 WL 1085406, at *7.  In that case, the court found that plaintiffs had adequately alleged harm to the public as a whole where plaintiff alleged defendant used "unknown substances and materials, in unknown locations and with unknown manufacturing requirements and controls, and the Unlawful Grey Market Goods are not regulated by the FDA."  *Id.*  These "unknown substances and materials" had the potential to be ingested by consumers and potentially posed "a serious danger to the health of consumers."  *Id.*  In this case, there have been no similar allegations or evidence proffered by Plaintiffs that would lead a reasonable fact finder to conclude that any alleged trademark infringement by Defendants posed the specific and substantial injury that is required for liability under NYGBL § 349.  Rather, the evidence shows that this case is more akin to a "[p]rivate contract dispute[], [which is] unique to the parties [and] would not fall within the ambit of the statute."  *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014) (affirming dismissal of NYGBL § 349 claim at summary judgment).  To the extent Plaintiffs are arguing that the injury was that consumers were confused about the Accused Watches, that too is insufficient to sustain their NYGBL § 349 claim because "confusion and deception of the consuming public is not distinct from the very harm that trademark laws generally seek to redress."  *Blockchange Ventures I GP, LLC v. Blockchange, Inc.*, No. 21-cv-891, 2021 WL 4340648, at *9 (S.D.N.Y. Sept. 22, 2021) (dismissing NYGBL § 349 claim).  Accordingly, the Court grants Defendants' motion on this claim, and Plaintiffs' NYGBL § 349 claim is dismissed.

## IV.    Defamation Counterclaim

Plaintiffs and Defendants have cross-moved on Defendant AS's defamation

counterclaim.  ECF No. 391-1 at 26–31; ECF No 392-1 at 26–34.  Plaintiffs have further moved

for summary judgment on their affirmative defenses to AS's defamation claim.  ECF No. 392-1

at 29–34.  To prove defamation, a claimant must establish the existence of the following five

elements:

> (1) a written defamatory statement of and concerning [the claimant][;]
> (2) publication to a third party[;]  (3) fault[;]  (4) falsity of the defamatory
> statement[;] and (5) special damages or per se actionability.

*Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019).[12]  However, under New York law,

"public policy mandates that certain communications, although defamatory, cannot serve as the

basis for the imposition of liability in a defamation action."  *Chandok v. Klessig*, 632 F.3d 803,

814 (2d Cir. 2011) (citing *Toker v. Pollak*, 376 N.E.2d 163, 166 (N.Y. 1978)).  Because the

Court finds that the undisputed facts support the application of the legal, moral, and common

interest privileges to this case, the Court grants Plaintiffs' motion for summary judgment on that

affirmative defense, and Defendants' defamation claim is dismissed.[13]

---

[12]    The parties agree that this is the applicable standard under New York law.  *See* ECF No. 391-1 at 26; ECF No. 392-1 at 26.

[13]    Because Plaintiffs' affirmative defense under the legal, moral, and common interest privileges is a complete defense to the defamation claim, the Court need not analyze AS's motion for summary judgment on its counterclaim as the motion must necessarily be denied in light of Plaintiffs' successful assertion of the privileges.  *See Boyd v. Nationwide Mut. Ins. Co.*, 208 F.3d 406, 410 (2d Cir. 2000) (unrebutted privilege constitutes a complete defense to defamation); *accord Conti v. Doe*, No. 17-cv-9268, 2019 WL 952281, at *8 (S.D.N.Y. Feb. 27, 2019); *Hussey v. N.Y.S. Dep't of L./Off. of Atty. Gen.*, 933 F. Supp. 2d 399, 414 (E.D.N.Y. 2013).

### A.    Legal, Moral, or Common Interest Privileges

"In New York, a statement is generally subject to a qualified privilege when it is fairly made by a person in the discharge of some public or private duty, legal or moral." *Loughlin v. Goord*, 558 F. Supp. 3d 126, 152 (S.D.N.Y. 2021), *aff'd*, No. 21-2460-cv, 2022 WL 9575656 (2d Cir. Oct. 17, 2022).  Additionally, "New York common law affords qualified protection to defamatory communications made by one person to another upon a subject in which both have an interest." *Sullivan v. Aircraft Servs. Grp., Inc.*, No. 19-cv-6500, 2025 WL 676027, at *17 (E.D.N.Y. Mar. 3, 2025).  This privilege, commonly known as the "common interest privilege," may be invoked where the parties "have such a relation to each other as would support a reasonable ground for supposing an innocent motive for imparting the information." *Scott v. Thayer*, 75 N.Y.S.3d 603, 605 (N.Y. App. Div. 2018).  "In some instances the common-interest privilege may overlap the moral-duty privilege, for one may have a moral duty to communicate knowledge and information about a person in whom the speaker has an interest to another who also has an interest in such person." *Loughlin*, 558 F. Supp. at 153.

Plaintiffs argue that their reports to Amazon are subject to these privileges.  With respect to the legal or moral duty privilege, Plaintiffs argue that Fossil had a duty under its license agreement with MK to report any suspected trademark infringement or counterfeiting.  *See* ECF No. 392-1 at 30.  Plaintiffs also argue they had an obligation under the law to protect their consumers from counterfeits and that "[f]ailure to do so [could] result in dilution or abandonment of a mark by acquiescence." *Id.* at 30 & n.12.  With respect to the common interest privilege, Plaintiffs argue that they had a shared interest with Amazon:  "keeping counterfeit products off Amazon.com." *Id.* at 30.  Plaintiffs' contract with Fossil and Fossil's legal obligation to monitor the market for counterfeit products clearly place Plaintiffs' statements to Amazon within the

realm of their "legal or moral" obligations.  *Chandok*, 632 F.3d at 816 (finding privilege applied where speaker's actions were a result of legal reporting requirements); *Rekor Sys., Inc. v. Loughlin*, No. 19-cv-7767, 2022 WL 3020148, at *14 (S.D.N.Y. July 29, 2022) (filing of Form 10-Q with the SEC qualified as covered by the common interest and legal privileges).  The statements likewise fit under the common interest privilege.  *See Editor's Pick Luxury LLC v. Red Points Sols. SL*, No. 22-cv-07463, 2023 WL 6385993, at *2 (S.D.N.Y. Sept. 29, 2023) (recognizing common interest privilege extends to business interests, which includes the interest in preventing intellectual property infringement on e-commerce websites).

These privileges may be overcome or rebutted, however, by a showing of actual or common law malice, or proof that the speaker "either knew his statements were false or acted with reckless disregard as to whether they were false."  *Conti v. Doe*, 535 F. Supp. 3d 257, 279 (S.D.N.Y. 2021).  "As for what is needed to prove 'actual' malice, there is a critical difference between not knowing whether something is true and being highly aware that it is probably false. Only the latter establishes reckless disregard in a defamation action."  *Chandok*, 632 F.3d at 815. For common law malice, AS needed to come forward with proof that Plaintiffs acted with "spite or ill will."  *Id.*

Here, AS argues that Plaintiffs' statements were false, and that they were made with malice as part of "a coordinated effort to preclude select third-parties from reselling genuine [MK] Products on online marketplaces by false allegations of intellectual property infringement and defamation."  ECF No. 115 ¶ 26 (Counterclaim); *see also* ECF No. 392-23 at 27 ("Plaintiffs' false reports are part of an ongoing scheme to stifle competition.").  AS has introduced evidence which indicates Plaintiffs were informed by a brand enforcement company that they could "combat[] online resellers by engaging them through Amazon's ecosystem and threatening them

with loss of their selling privileges because of violations of Amazon policies."  ECF No. 391-8 at

7.  However, AS fails to show how this isolated sales pitch by a potential third-party vendor to

Plaintiffs in 2018 improperly motivated them to report the Accused Watches as counterfeit to

Amazon in 2019 and 2020.  Indeed, as discussed throughout this opinion, Plaintiffs maintain that

the Accused Watches sold on AS's storefront were counterfeit.

It may very well be that Defendants sincerely believe that Plaintiffs acted with malice in

reporting the Accused Watches to Amazon, but, without more, "such speculation is legally

insufficient to create malice."  *Ratajack v. Brewster Fire Dep't, Inc. of the Brewster-Se. Joint

Fire Dist.*, 178 F. Supp. 3d 118, 172 (S.D.N.Y. 2016) (finding speculation that Board of

Directors acted with malice to terminate plaintiff insufficient to overcome the common interest

privilege).  In fact, for common law malice, "a triable issue is raised *only* if a jury could

reasonably conclude that malice was the one and only cause for the publication."  *Rekor Sys.*,

2022 WL 3020148, at *14 (emphasis added) (because plaintiff was required to issue a disclosure,

common law malice could not be found as the one and only cause for the statement); *see also

Chandok*, 632 F.3d at 815 ("[A]s to common-law malice, only if a jury could reasonably

conclude that spite or ill will was the one and only cause for the publication is a triable issue

raised.").  The undisputed evidence does not support a finding that Plaintiffs acted with malice—

in other words, that they knew it was highly probable their statements to Amazon were not true.

AS has also failed to put forward sufficient evidence that Plaintiffs acted with reckless disregard

as to whether their statements were false.  Even if malice was shown here (which it was not), the

evidence also does not support that it was "the one and only cause" for Plaintiffs to report the

Accused Watches to Amazon.  Dismissal of AS's defamation claim is therefore appropriate

under the legal, moral, or common interest privileges.  *Chandok*, 632 F.3d at 818 (affirming

23

dismissal of defamation claim under legal and moral privilege where the claimant "failed to adduce evidence of either 'actual' or common-law malice sufficient to create a genuine issue for trial"). AS's defamation claim is therefore dismissed.

*    *    *

For the sake of clarity, and to assist the parties as they prepare for trial, the Court provides a summary of its decision as set forth in more detail herein. The Court grants in part and denies in part the parties' motions for summary judgment. With respect to the Infringement-Related Claims, the Court finds that Plaintiffs have valid marks that are entitled to protection, but there are questions of fact as to whether Defendants' actions were likely to cause confusion with those marks. Critical to these claims is the question of whether the Accused Watches are counterfeit. Because there are issues of fact as to whether the Accused Watches are counterfeit, AS's affirmative defense under the First Sale Doctrine survives. With respect to the trademark dilution claim, the Court finds that the MK Marks are famous, that Defendants made commercial use of the MK Marks, and that Defendants' use began after the MK Marks became famous. The trademark dilution claim, however, survives for trial to the extent the jury must still decide the last factor of the dilution analysis, whether Defendants' use of the MK Mark dilutes the quality of the MK Mark. This final element also depends on whether the Accused Watches are counterfeit. Third, the Court grants Defendants' motion for summary judgment as to Plaintiffs' NYGBL § 349 claim, and that claim will not proceed to trial. Finally, the Court grants Plaintiffs' motion for summary judgment on AS's counterclaim for defamation, and that claim, likewise, will not proceed to trial.

**CONCLUSION**

For the reasons set forth above, the Court grants in part and denies in part the parties' motions for summary judgment.  *See* ECF No. 391; ECF No 392.  Because the parties submitted extensive sealing requests in relation to their motions, this Order is being filed under seal.  The parties shall file a joint motion to seal any portions of this Order, if necessary, on or before **April 4, 2025**.  The Order will be made publicly available thereafter with any necessary redactions.

This case is being referred to Magistrate Judge Merkl for the following purposes: (1) Judge Merkl shall review any proposed redactions to this Order that are submitted by the parties and determine whether those redactions are consistent with her earlier rulings on sealing; (2) Judge Merkl shall oversee any further expert discovery that needs to be taken with respect to damages only, with a **May 20, 2025,** deadline to complete such discovery; and (3) Judge Merkl shall coordinate the filing of the parties' proposed joint pretrial order ("JPTO"), which shall be completed in accordance with my individual practices and filed within **30 days** after the close of any further expert discovery related to damages.  The parties shall also inform Judge Merkl whether they would like to be referred to mediation or a settlement conference.

Consistent with the goals of Rule 1 of the Rules of Civil Procedure, and to avoid the risk of cumulative and unnecessary evidence, the Court has decided to implement a time limitation for the trial of this matter.  Based on the limited number of issues that remain following the Court's summary judgment decision, and its awareness of the scorched-earth manner in which this litigation has proceeded to date, the Court informs the parties that, at trial, each side will be allowed **15** hours of trial time in the presence of the jury (including jury addresses), for a total of **30** trial hours.  To the extent the parties seek, and the Court permits, bifurcation, the allotted time includes both the liability and damages phases.  The time for jury selection will not count for

either party.  Time will be kept by the Court and reported on the record periodically.  For the avoidance of doubt, time will accrue when counsel for a side is standing in the presence of the jury.  The proposed JPTO must conform to the **30** hours allotted for trial.

SO ORDERED.

/s/ Hector Gonzalez
  HECTOR GONZALEZ
  United States District Judge

Dated: Brooklyn, New York
        March 20, 2025